# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GLEPCO, LLC, a Washington limited liability company; and GREG and PAMELA HINTON, husband and wife, | ) ) ) | No. 67934-1-I |
| | ) ) | DIVISION ONE |
| Respondents, | ) ) | |
| | ) | PUBLISHED OPINION |
| v. | ) ) | |
| AARON REINSTRA and JAIME, REINSTRA, husband and wife and NORTHWEST TRUSTEES SERVICES, INC., | ) ) ) ) | |
| | ) | |
| Appellants. | ) | FILED: July 22, 2013 |

SPEARMAN, A.C.J. — The underlying case is a quiet title action involving property purportedly sold at a nonjudicial foreclosure sale. At the sale, the respondents made a successful bid on the appellants' property, believing, based on the address and other references in the deed of trust and notice of trustee's sale, that they were bidding on a three-acre lot with a house on it. After the sale, however, the buyers discovered that the legal description of the property in those documents described only the drain field portion of the land. The respondents brought a quiet title action against the appellants, arguing that the deed of trust beneficiary's security interest was in fact on the entire three-acre lot and that the erroneous legal description should be reformed because it was the result of

scrivener's error or mutual mistake in the deed of trust between the beneficiary and appellants. The trial court denied the appellants' CR 12(b)(6) motion, which argued that reformation was unavailable as a matter of law. The court granted summary judgment in favor of the respondents, ordered reformation of the legal description in the trustee's deed, and quieted title in the respondents. The questions on appeal are whether a court in equity may reform the legal description of real property in conveyance documents in the context of a nonjudicial foreclosure and, if so, whether the trial court in this case properly granted summary judgment reforming the legal description based on mutual mistake or scrivener's error. We hold that a trial court may reform conveyance documents in this context. We further hold that the trial court properly granted the trustee's sale buyers' requests for reformation and to quiet title to the disputed property in their favor.

## FACTS

On April 15, 2003, Aaron and Jaime Reinstra ("the Reinstras"), a married couple, purchased property in Skagit County and received a statutory warranty deed. The deed conveyed two adjacent lots, "A" ("The east 105 feet of the west 314 feet of the north 418 feet") and "B" ("The west 209 feet of the north 418 feet").[1] Clerk's Papers (CP) at 111-12. To develop the property as they wished, the Reinstras were required by Skagit County ("the County") to make a boundary line adjustment to combine the two lots into one lot ("combined lot").

---

[1] The statutory warranty deed uses the term "parcel" rather than "lot." The parties use the terms interchangeably.

2

On October 5, 2005, to complete the joining of the lots, the Reinstras recorded a quit claim deed, and conveyed to themselves the property described. The quit claim deed provided a legal description of Lot A and then stated:

> The herein described property will be combined or aggregated with the contiguous property to the West[2] owned by the Grantees. This boundary adjustment is not for the purposes of creating an additional building lot.

Id. The County issued a permit for the construction of a single residence and on-site sanitary system to be built on the combined lot.

In 2006, the Reinstras borrowed $200,000 from Peoples Bank to build the house on former Lot B. The loan was secured by a deed of trust dated May 4, 2006. The legal description of the land in the deed of trust described the combined lot. The "assessor's parcel or tax account number" on the deed of trust is the tax parcel number (P123543) assigned by the Skagit County Assessor to the combined lot. In late 2006, the Reinstras refinanced and obtained a new loan from Peoples Bank for $208,500, with the deed of trust securing that loan also describing the combined lot. The title policy for both loans refers to tax parcel number P123543.

Between 2007 and 2008, Peoples Bank sold the Reinstras' loan to GMAC Bank. On May 19, 2008, the Reinstras refinanced with GMAC, obtaining a loan for $250,100 secured by a deed of trust. GMAC drew up the refinancing paperwork and the Reinstras signed it. The Reinstras assumed GMAC had the same security for the 2008 loan that Peoples Bank had: the combined lot. Id.

---

[2] The "contiguous property to the West" referred to Lot B.

That deed of trust was recorded with the Skagit County Auditor and granted GMAC a security interest in the "Property." "Property" is defined as "the property that is described under . . . the heading 'Transfer of Rights in the Property.'" CP at 341. The "Transfer of Rights in the Property" section identifies the address of the property as 14022 Dodge Valley Road, in La Conner, Washington 98257, with tax parcel number P123543. CP at 342. The section instructs, "[S]ee attached legal description." Id. The attached legal description identifies the Assessor's Parcel Number as P123543 and describes:

> The East 105 ft. of the West 314 ft. of the North 418 ft. of the Northwest quarter of the Northwest quarter of Section 9, Township 33 North, Range 3 East, W. M. lying South of the county road running along the North line of said subdivision.

CP at 355. This description includes former Lot A, but not former Lot B.

The Reinstras defaulted on their 2008 loan from GMAC. Northwest Trustee Services, Inc. recorded a notice of trustee's sale with the Skagit County Auditor on June 17, 2010. The notice states that the "Property" subject to the May 19, 2008 deed of trust and described on the first page would be sold on September 17, 2010. The property is identified as "commonly known as: 14022 Dodge Valley Road, La Conner, WA 98257" with tax parcel number P123543. CP at 305. The Dodge Valley address is the address for the house on former Lot B. The first page of the notice of trustee's sale states, "The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein." CP at 305. As in the deed of

4

No. 67934-1-I/5

trust, the legal description includes only former Lot A, as follows: "The East 105 ft. of the West 314 ft. of the North 418 ft." Id.

Before the trustee's sale, Greg and Pamela Hinton, a married couple (collectively with GLEPCO, LLC,[3] "the Hintons"), checked Skagit County Assessor records, which showed the property at the Dodge Valley Road address as being three acres—the approximate size of the combined lot—and included a photograph of the house with tax parcel number P123543. The Hintons visited the property, examined the house and outbuilding, and saw that the three-acre property was fenced on all sides except the north side abutting the street. No fences ran through the interior of the property. They believed they would be bidding on the combined lot.

At the trustee's sale, the Hintons made a successful bid of $283,137.51 and paid the trustee at the time of sale. As a result of the sale, the trustee satisfied the obligation secured by the deed of trust in the amount of $278,831.27, recovered its own costs, and deposited the $3,541.24 surplus with the court on December 28, 2010. The Reinstras moved out of the house 21 days after the sale.[4]

The trustee's deed was recorded on September 29, 2010. Like the deed of trust and notice of trustee's sale, the trustee's deed describes only former Lot A.

---

[3] GLEPCO's members are Greg and Pamela Hinton individually.

[4] The Reinstras claim they moved under pressure from the Hintons. At the hearing on the Reinstras' CR 12(b)(6) motion, the Hintons' attorney stated that at that time the Hintons were in possession of the house and had a renter in it. The Reinstras argue that the fact of their moving out should not be considered for purposes of the CR 12(b)(6) motion, because the Hintons did not allege possession of the house in their complaint.

5

Sometime after the trustee's sale, the Hintons became aware that the legal description in the deed of trust, notice of trustee's sale, and trustee's deed did not include former Lot B.

On January 26, 2011, the Hintons filed a complaint to quiet title and for declaratory relief against the Reinstras.[5] They alleged the Reinstras remained record title holder of former Lot B by mutual mistake or through scrivener's error. They sought a judgment reforming the trustee's deed and deed of trust and quieting title to former Lot B in their favor. The Reinstras counterclaimed for wrongful eviction and sought a judgment quieting title in their favor.

The Reinstras filed a CR 12(b)(6) motion to dismiss, arguing that the remedy of reformation was barred by the statute of frauds and chapter 61.24 RCW. The trial court denied the motion. After the parties engaged in discovery, the Hintons filed a summary judgment motion. Following a hearing, the trial court found there were no disputed issues of material fact and granted summary judgment on the Hintons' reformation and quiet title claims.

The Reinstras appeal from the order denying their CR 12(b)(6) motion and the order granting summary judgment to the Hintons.

DISCUSSION

CR 12(b)(6) Ruling

A trial court's ruling on a CR 12(b)(6) motion is a question of law reviewed de novo. Cutler v. Phillips Petroleum Co., 124 Wn.2d 749, 755, 881 P.2d 216

---

[5] The Hintons also sued the trustee who conducted the trustee's sale but this appeal does not involve the trustee.

(1994). Under CR 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. "A CR 12(b)(6) motion is properly granted when it appears from the face of the complaint that the plaintiff would not be entitled to relief even if he proves all the alleged facts supporting the claim." Citizens for Rational Shoreline Planning, et. al., v. Whatcom County, 172 Wn.2d 384, 389, 258 P.3d 36 (2011).

It is well settled that instruments subject to the statute of frauds[6] may be reformed where scrivener's error or mutual mistake leads to a deficient description of land. Berg v. Ting, 125 Wn.2d 544, 553-54, 886 P.2d 564 (1995) (courts may reform contract where scrivener's error or mutual mistake leads to deficient legal description of land); Tenco, Inc. v. Manning, 59 Wn.2d 479, 485-86, 368 P.2d 372 (1962) (courts may reform defective legal description resulting from mutual mistake); Geoghegan v. Dever, 30 Wn.2d 877, 888-89, 194 P.2d 397 (1948) (courts in equity may reform contract to correct scrivener's error or mutual mistake). Where a legal description of property is inadequate due to scrivener's error or mutual mistake, a document is not tested for compliance with the statute of frauds until it is reformed to reflect the parties' intent.[7] Halbert v. Forney, 88

---

[6] The real estate statute of frauds provides, "Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed . . . ." RCW 64.04.010; see also Martin v. Seigel, 35 Wn.2d 23, 212 P.2d 107 (1950) (requiring every contract or agreement involving sale or conveyance of real property to contain legal description of property, including lot number, block number, addition, city, county, and state).

[7] Therefore, we reject the Reinstras' argument that, because the legal description in the trustee's deed did not include the disputed land, reformation is precluded by the statute of frauds. It is undisputed that the trustee's deed complied with the statute of frauds insofar as it related to former Lot A; the only issue is whether the legal description should be reformed to also include former Lot B.

Wn. App. 669, 673, 945 P.2d 1137 (1997) (citing Tenco, 59 Wn.2d at 485). Deeds of trust and trustee's deeds are subject to the statute of frauds.

The Reinstras argue that trial courts are nonetheless precluded from exercising their equitable powers of reformation if the instrument at issue arises in the context of a nonjudicial foreclosure sale. Initially, the Reinstras contend the Hintons lacked standing to bring a quiet title action because they had no "valid subsisting interest" under RCW 7.28.010[8] to former Lot B. We disagree. The Hintons alleged in their complaint that they had an interest in former Lot B based on having purchased the property in a trustee's sale, and their quiet title action is concurrent with their effort to seek reformation of the trustee's deed based on scrivener's error or mutual mistake. The Reinstras point to no authority interpreting the statute to preclude the Hintons from asserting a valid subsisting interest in former Lot B under these circumstances.

The Reinstras next contend the Hintons' failure to read the legal description in the deed of trust and notice of trustee's sale cannot be excused, citing Washington Federal Sav. & Loan Ass'n v. Alsager, 165 Wn. App 10, 266 P.3d 905 (2011) rev. denied, 173 Wn.2d 1025, 272 P.3d 851 (2012) and Skagit State Bank v. Rasmussen, 109 Wn.2d 377, 745 P.2d 37 (1987). In Washington Federal, the court rejected the argument of borrowers that no valid loan agreement had been

---

[8] RCW 7.28.010, the statutory authority for quiet title actions, provides:

Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county, to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title or some interest therein, and may have judgment in such action quieting or removing a cloud from plaintiff's title; . . . .

formed and they did not breach the agreement because a notary misinformed them about the terms of the loan and rushed them through the signing process. Washington Federal, 165 Wn. App. at 12-14. The court refused to excuse the borrowers from their failure to take the opportunity to read the loan documents. Id. at 17. Similarly, in Skagit State Bank, a borrower signed loan documents without reading them and sought to avoid the obligations contained therein on the ground that the legal effect of the documents was misrepresented to him. Skagit State Bank, 109 Wn.2d at 378. The court rejected his argument, explaining that the evidence showed he would have understood the documents had he read them and that he was not entitled to rely on another person's understanding of the documents. Id. at 384-86. These cases are inapposite; in neither was reformation sought by a trustee's sale buyer based on mutual mistake or scrivener's error in the legal description of property.

The Reinstras further argue that reformation is contrary to RCW 64.04.020, which requires that "[e]very deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds." In connection with their reliance on this statute, the Reinstras cite Berg. Neither the statute nor Berg prohibits reformation. The court in Berg, which involved property owners' quiet title action over an easement across their neighbor's property, acknowledged the remedy of reformation but noted there was no evidence of mutual mistake or scrivener's error in that case. Berg, 125 Wn.2d at 553-55.

The Reinstras also contend the Deed of Trust Act ("the Act"), chapter 61.24 RCW, does not give courts authority to look beyond an unambiguous deed of trust, notice of trustee's sale, and trustee's deed, citing McPherson v. Purdue, 21 Wn. App. 450, 585 P.2d 830 (1978) in support. In McPherson, the deed of trust at issue conveyed two easements, but the grantor had title to only one of them. Id. at 451. The trustee knew the easement was not included in the interest to be foreclosed under the deed of trust but did not disclose this to the buyer. Id. The notices and deed purported to convey both easements but disclaimed all express or implied warranties. Id. The buyer sued to quiet title and establish a prescriptive easement. Id. at 450. The court relied on the policy underlying chapter 61.24 RCW and concluded that requiring a trustee to guarantee title or make disclosures concerning defects of title would add burdens on the lender and borrower. Id. at 452. The court stated that generally caveat emptor applied to sales based on foreclosure of deeds of trust. Id. But, unlike here, the plaintiff in McPherson did not seek reformation or assert mutual mistake or scrivener's error in the deed of trust.

Next, the Reinstras argue reformation denies their right under RCW 61.24.100(1)[9] to be free of deficiency judgment. They contend the court's role should be limited to determining whether the procedures in the Act have been followed, citing Udall v. T.D. Escrow Services. Inc., 159 Wn.2d 903, 911, 154

---

[9] RCW 61.24.100(1) provides, "Except to the extent permitted in this section for deeds of trust securing commercial loans, a deficiency judgment shall not be obtained on the obligations secured by a deed of trust against any borrower, grantor or guarantor after a trustee's sale under that deed of trust."

P.3d 882, (2007). They contend that if the bank had bid at the trustee's sale and received former Lot A, it would be barred by RCW 61.24.100(1) from receiving former Lot B. They note that GMAC had the option under RCW 61.24.100(2)(a)[10] to sue on its note and have recourse to their assets, including former Lot B. Because it did not, it is bound by the trustee's sale. They contend a trustee's sale buyer should not receive more relief than the lender under the same circumstances.

This argument is not supported by the cited authority. It is not clear that RCW 61.24.100(1) would bar the bank from seeking reformation if it had purchased the property at the trustee's sale. The statute prohibits a deficiency judgment after a trustee's sale, but it is unclear why reformation—whether sought by the bank or the Hintons—would equate to a deficiency judgment if the evidence showed that the property in dispute was subject to the lender's security interest and should have been incorporated in the legal description to begin with. Moreover, the Reinstras assume, without explaining why, that the Hintons are prohibited from doing what the bank may not. Finally, the cited portion of Udall addressed whether a trustee could withhold the deed from a purchaser after a nonjudicial foreclosure because of insufficient price. Udall, 159 Wn.2d at 911. The court concluded that the trustee could not do so "unless the sale itself was void due to a procedural irregularity that defeated the trustee's authority to sell

---

[10] RCW 61.24.100(2)(a) provides, "Nothing in this chapter precludes an action against any person liable on the obligations secured by a deed of trust or any guarantor prior to a notice of trustee's sale being given pursuant to this chapter or after the discontinuance of the trustee's sale."

11

the property." Id. But this is not the issue before us. Udall says nothing about the issue presented here, whether mutual mistake or scrivener's error can be the basis for reformation of a deed following a trustee's sale.

The Reinstras also contend the Hintons, as trustee's sale buyers, may not seek reformation because they were not a party to the 2008 deed of trust. We disagree. "Standing to assert a claim in equity resides in the party entitled to equitable relief; it is not dependent on the legal relationship of those parties." Smith v. Monson, 157 Wn. App. 443, 445, 236 P.3d 991 (2010) (party who conveyed property to relatives had standing to seek equitable remedy of quiet title based on equitable mortgage to challenge the relatives' conveyance to third parties). In Martin v. Walters, 5 Wn. App. 602, 490 P.2d 138 (1971), the court rejected the argument that reformation of an instrument was impermissible because the original parties to the instrument were not involved in the action:

> The successors in interest to the two parties were before the court and if the original instrument contained, as the court found that it did, a mutually mistaken description of the property leased, reformation was a proper remedy.

Id. at 604-05. Though these cases do not involve a trustee's sale buyer, as here, the Hintons are successors in interest to the deed of trust. They would benefit from establishment of mutual mistake or scrivener's error in that instrument. The Reinstras cite no authority holding that reformation can be sought only by the parties to the contract.

Finally, the Reinstras argue that a party cannot invoke mutual mistake where it assumes the risk of that mistake, citing Denaxas v. Sandstone Court of

Bellevue. L.L.C., 148 Wn.2d 654, 667-68, 63 P.3d 125 (2003) and CPL

(Delaware) LLC v. Conley, 110 Wn. App. 786, 791-92, 40 P.3d 679 (2002). They

contend the Hintons should not be able to invoke mutual mistake or scrivener's

error because a trustee makes no warranties under the Act and the Act allocates

risk to trustee's sale buyers. But those cases refer to the risk at the time a party

enters into an agreement. The Hintons were not a party to the deed of trust and

no risk was assumed by them as part of the creation or signing of that document.

We disagree with the Reinstras that anything in the Act or the cited

authorities precludes a trial court from exercising its equitable power to reform a

legal description in a conveyance instrument because the instrument in question

arises in the context of a nonjudicial foreclosure sale. The Act is silent on

reformation. It is true that under RCW 61.24.040, potential buyers are notified

that "[t]he sale will be made without warranty, express or implied, regarding title,

possession, or encumbrances . . ."[11] RCW 61.24.040(1)(f). But we do not

understand this statute to preclude reformation where a defect in the legal

description is alleged as the product of scrivener's error or mutual mistake. The

trial court did not err in denying the CR 12(b)(6) motion.

---

[11] Here, the trustee's deed stated, in accordance with the statute:

> This conveyance is made without representations or warranties of any kind, expressed or implied. By recording this Trustee's Deed, Grantee understands, acknowledges and agrees that the Property was purchased in the context of a foreclosure, that the trustee made no representations to Grantee concerning the Property and that the trustee owed no duty to make disclosures to Grantee concerning the Property, Grantor relying solely upon his/her/their/its own due diligence investigation before electing to bid for the Property.

CP at 310.

## Summary Judgment

Next we determine whether the trial court, after concluding that reformation was an available remedy, properly found mutual mistake or scrivener's error based on the evidence before it and properly granted the Hinton's motion for summary judgment. We review summary judgment motions de novo, engaging in the same inquiry as the trial court. Sheikh v. Choe, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Summary judgment is appropriate if, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601-02, 200 P.3d 695 (2009); CR 56(c). Summary judgment is appropriate if reasonable minds could reach but one conclusion from all the evidence. Clements v. Travelers Indem. Co., 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). The exercise by the superior court of equity discretion is reviewed under the abuse of discretion standard. Wilhelm v. Beyersdorf, 100 Wn. App. 836, 848-50, 999 P.2d 54 (2000).

The Reinstras point to no specific issues of disputed fact on summary judgment.[12] They argue, instead, that summary judgment was improperly granted because the deed of trust, notice of trustee's sale, and trustee's deed all describe former Lot A and not former Lot B. But this is the very genesis of the parties'

---

[12] At the summary judgment hearing below, the trial court asked the Reinstras whether there was any evidence that the actual intent of GMAC and the Reinstras was to sell only former Lot A at the foreclosure sale or evidence that the legal description in the deed of trust was in fact the intended legal description. The Reinstras acknowledged they did not have evidence directly on that point. The Reinstras also agreed that there were no disputed issues of fact for which trial was necessary.

dispute and does not show that a scrivener's error or mutual mistake was not made at the time the deed of trust was executed.

Reformation by a court is an equitable remedy that brings a writing that is materially different from the parties' agreement into conformity with that agreement. Denaxas, 148 Wn.2d at 669 (citing Akers v. Sinclair, 37 Wn.2d 693, 702, 226 P.2d 225 (1950)). A party seeking reformation must prove the facts supporting it by clear, cogent, and convincing evidence. Akers, 37 Wn.2d at 703. A mutual mistake occurs if the parties had the same intentions but their written agreement does not accurately express their intentions. Snyder v. Peterson, 62 Wn. App. 522, 527, 814 P.2d 1204 (1991). A mistake is a belief not in accord with the facts. Simonson v. Fendell, 101 Wn.2d 88, 91, 675 P.2d 1218 (1984). "A scrivener's error occurs when the intention of the parties is identical at the time of the transaction but the written agreement errs in expressing that intention." Reynolds v. Farmers Ins. Co., 90 Wn. App. 880, 885, 960 P.2d 432 (1998). A court ascertains the parties' intent "'by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1990) (quoting Stender v. Twin City Foods, Inc., 82 Wn.2d 250, 254, 510 P.2d 221 (1973)).

To establish either mutual mistake or scrivener's error, it must be shown that the parties to the instrument possessed the same intentions. Here, the undisputed evidence establishes that GMAC and the Reinstras, in executing the

15

2008 deed of trust, intended to secure the loan with the combined lot and thus have the legal description in the deed of trust describe the combined lot. By 2005, a single legal lot had been created so that the Reinstras could build a house and drain field on the property. The deeds of trust for the 2006 Peoples Bank loan and the subsequent refinance with Peoples Bank contained a legal description of the combined lot. The Reinstras' deposition testimony establishes that when they signed the loan documents for the 2006 Peoples Bank loan and the 2007 refinance, they correctly assumed that the bank's security interest was on the combined lot.[13] Peoples Bank then sold the Reinstras' loan, with no change in the legal description of the property, to GMAC in 2007 or 2008.

The change in the legal description arose during the May 2008 refinance with GMAC.[14] There were no discussions, however, between the Reinstras and GMAC about modifying the legal description or the security from the previous loan with Peoples Bank. The Reinstras assumed GMAC would have the same security for the 2008 loan that Peoples Bank had in 2006. While there is no evidence in the record from GMAC, we can discern no logical reason whatsoever, nor is any offered, as to why GMAC would have agreed to eliminate the valuable part of the security with the house on it. We can also discern no reason why the parties would have agreed that the security on the loan would only be part of what was a single legal lot. Moreover, all other references to the

---

[13] The testimony of Aaron Reinstra and Jaime Reinstra does not materially differ.

[14] The Hintons suggest that the source of the defect in the legal description in the 2008 deed of trust is the 2005 quit claim deed from the Reinstras to themselves, which combines former Lots A and B but contains a legal description of only former Lot A and was the last "vesting document" at the time of the 2008 loan.

property in the 2008 deed of trust (the street address and tax parcel number) make it clear that the parties to the deed of trust intended GMAC to have a security interest in the combined lot.

The undisputed evidence shows the incorrect legal description in the 2008 deed of trust was the result of a mutual mistake. GMAC and the Reinstras intended to secure the loan with the combined lot. But the legal description did not accurately describe the entire property subject to the bank's security interest. Thus, the parties' belief as to what land was described by the legal description was not in accord with the fact that the legal description actually only covered former Lot A, not former Lot A and former Lot B. The trial court properly granted summary judgment on this issue.

The undisputed evidence also shows that the inaccurate legal description was the result of scrivener's error. The Reinstras point to the lack of evidence regarding GMAC's document preparation and the scrivener. However, proof of a fact to be established may be by direct or circumstantial evidence. Lamphiear v. Skagit Corp., 6 Wn. App. 350, 356, 493 P.2d 1018 (1972); see also 6 WASHINGTON PATTERN JURY INSTRUCTIONS (WPI) 1.03 (evidence may be direct or circumstantial, and one is not necessarily more or less valuable than the other). And here, there is substantial, undisputed circumstantial evidence that the incorrect legal description was due to a scrivener's error. The parties to the deed of trust intended GMAC's security interest to include the combined lot. The Reinstras relied on GMAC to do the paperwork for the 2008 refinance. The legal description failed to capture that intent. The mistake was adopted by the

17

Reinstras and GMAC when they signed the deed of trust, and was then carried over into the notice of trustee's sale and trustee's deed. On this issue, because reasonable minds could reach but one conclusion from the evidence, summary judgment was properly granted. Clements, 121 Wn.2d at 249.

Finally, as noted, reformation is an equitable remedy reviewed for abuse of discretion. Wilhelm, 100 Wn. App. at 848-50. The trial court did not abuse its discretion in determining that the equities weighed in favor of the Hintons. The Hintons believed they were bidding on the combined property and the Reinstras believed the trustee's sale was on the combined property.[15] If title to former Lot B is left in the Reinstras, the Hintons' payment to the trustee would satisfy the Reinstras' obligation to GMAC while the Reinstras would be able to keep the valuable part of the property with the house and the Hintons would be left with only the drain field.

It was possible the Reinstras could have been harmed by the defective legal description in the deed of trust if other interested bidders, who would have bid and paid more than what the Hintons did, were dissuaded after having noticed the defective description. However, the Reinstras do not argue that they were entitled to additional proceeds from the sale or present other evidence that they were actually harmed as a result of the defective legal description.[16] The Reinstras present no evidence of a lack of actual competition in bidding on their

_____

[15] The Reinstras were not aware of the difference in the legal description between the 2008 GMAC deed of trust and the 2006 Peoples Bank deed of trust until after the trustee's sale.

[16] RCW 61.24.080 governs the disposition of the proceeds of a trustee's sale. The Reinstras do not explain whether there were any other interests in or liens on the property before they could collect any surplus as provided under subsection (3).

property. They provide the affidavit of real estate broker Peter Papadopulos, who stated that he decided not to participate in the sale because he noticed the discrepancy in the legal description. But Papadopulos's declaration states only that after noticing the discrepancy he "chose not to investigate any further." CP at 329. He did not state that he would have bid a specific amount over what the Hintons offered had he believed former Lot B was included. Moreover, the Reinstras do not point to evidence contradicting the Hintons' claim that they made a "full-price" cash offer.[17]

The trial court correctly determined on summary judgment that the legal description in the 2008 deed of trust did not express the identical intentions of GMAC and the Reinstras and was the result of mutual mistake or scrivener's error. It properly determined that reformation was appropriate and ordered the legal description in the trustee's deed reformed to include former Lot B. Finally, after the trial court properly granted reformation of the trustee's deed to include former Lot B, there were no remaining disputed issues for purposes of the quiet title action. The trial court therefore properly granted summary judgment on that issue.

### Attorney's Fees on Appeal

The Hintons seek attorney's fees on appeal based on the following provision in the 2008 deed of trust:

---

[17] While the trustee's sale price was less than the assessor's value of $559,500 for tax year 2010, there is no evidence in the record that any other bidder would have offered more than the Hintons did at the foreclosure sale.

> **Attorneys' Fees**. Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

CP at 189. The Hintons' request is denied. The quoted language provides no basis for awarding fees to the Hintons; it provides for fees to the <u>lender</u> in an action to construe or enforce the deed of trust.

Affirmed and remanded for further proceedings.[18]

WE CONCUR:

_____

_____

---

[18] The record shows that the Reinstras have been charged with the real property taxes on the disputed lot after the trustee's sale. We remand for any further proceedings that may be relevant to this issue.