# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, not in its individual capacity but solely as owner trustee of CSMC 2022-JRI trust,<br><br>Appellant,<br><br>v.<br><br>BEVERLY D. HOPKINS, personally and as trustee of the Robert and Beverly D. Hopkins trust, dated November 13, 2001,<br><br>Respondent. | No. 85352-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — In 2001, Beverly and Robert Hopkins placed their home into a living trust (the Trust). In 2007, Robert[1] received a personal loan from Bank of America N.A. (BOA). A deed of trust was executed to secure the loan, naming Beverly and Robert in their individual capacity, rather than in their capacities as co-trustees of the Trust. In 2022, Wilmington Savings Fund Society FSB (WSF), the successor beneficiary of the deed of trust, filed this action for reformation of the deed of trust. WSF appeals from the trial court's judgment denying its reformation claim, arguing several findings are unsupported by substantial evidence and the trial court erred in denying its reformation claim, voiding the deed of trust, and granting Beverly attorney fees. Finding no error, we affirm.

---

[1] For clarity, we use first names to refer to Beverly and Robert Hopkins. We intend no disrespect.

I

The Hopkinses purchased the property at issue (the Property) in 1974 by a statutory warranty deed. The statutory warranty deed gave the following legal description of the Property: "Lot 2, Mercer Island Country Club Estates, Division No. 1, according to the plat thereof recorded in Volume 73 of Plats, pages 97 and 98, records of King County, Washington."

On November 13, 2001, the Hopkinses created the Trust and appointed themselves co-trustees. On the same day, the Hopkinses conveyed the Property to the Trust via quitclaim deed using the same legal description as in the statutory warranty deed. The Hopkinses informed BOA of the Trust.

In 2007, Robert applied for a home equity line of credit from BOA. On July 2, 2007, Robert signed a promissory note (Agreement) with BOA, which extended credit to Robert for $250,000.00. Neither Beverly nor the Trust were identified as a "borrower" in the Agreement. On the same day, the Hopkinses executed a deed of trust which purported to secure the obligations in the Agreement. The deed of trust named Beverly and Robert as "borrowers" in their individual capacities and identified Beverly and Robert in their individual capacities at the signature line. Beverly did not sign the Agreement, but purportedly signed the deed of trust. The deed of trust contained the following legal description: "LOT 2, MERCER ISLAND COUNTRY CLUB ESTES 1, ACCORDING TO THE PLAT THEREOF RECORDED, RECORDS OF KING COUNTY, WASHINGTON." Teresa Lam

2

notarized the Hopkinses' signatures on the deed of trust. After Robert passed away in 2015, Beverly made payments on the Agreement for a period of time.

In 2021, WSF's predecessor filed suit[2] to reform the deed of trust to identify the correct owner of the Property. The complaint identified the Property with the same legal description as in the statutory warranty deed and the quitclaim deed. Two subsequent amendments alleged the same legal description. Beverly asserted a counterclaim seeking to void the deed of trust. On April 10, 2023, Beverly filed her trial brief, arguing for the first time the deed of trust additionally had an incorrect legal description. A bench trial commenced on April 17, 2023.

At trial, WSF called Patrick Pittman to testify as a custodian of records for WSF. Pittman was not employed by BOA at the time of the underlying events and was not an authorized representative of BOA. Pittman testified there was no reason to have a nonowner of a property sign a deed of trust because "if they don't have any interest, then we don't have any collateral. This would make no sense, as no lender would give a loan with zero collateral." Pittman testified "the parties" made a mistake by not having the Hopkinses sign the deed of trust in their capacity as co-trustees, and the loan file reflected "[t]hat the signers intended to sign as co-trustees" of the Trust because doing otherwise "would defeat the purpose of the instrument."

---

[2] In 2021, U.S. Bank Trust N.A., WSF's predecessor in interest, filed suit to reform the deed of trust. In 2022, the trial court granted leave to amend the complaint to reflect the beneficiary change of the deed of trust from U.S. Bank to WSF.

WSF called Lam, who testified regarding her customary practices as a notary and explained that her procedure for notarizing documents included watching individuals sign and checking the individuals' photo identification to "make sure they are who they say they are." Lam testified that based on her procedure, she believed Beverly signed the deed of trust. WSF then rested.

In her case in chief, Beverly testified that she and Robert had joint finances until 1974, when Beverly moved to Mercer Island. Beverly separated her finances from Robert's because "as Robert moved from city to city, job to job, he would encumber a lot of debt, overspending, that he didn't have. And, of course, it affected our finances here. And when I got ready to pay the house—house note, the money was not there." Beverly testified the purpose of the Trust was "[t]o keep [Robert] from getting into debt again and getting it against the house so we wouldn't have to put the house in jeopardy. It was to secure the house for the future for us, me and the kids." Beverly testified the signature on the deed of trust looked like her signature, but she did not remember signing it. Beverly testified the loan proceeds did not go to the benefit of the house or to any of the beneficiaries of the Trust, and she did not discover that Robert had taken out the loan until BOA started sending her notices after Robert's death. Beverly testified she did not intend to encumber her home with the deed of trust.

The trial court issued its findings of fact and conclusions of law, concluding WSF did not meet its burden of proof to reform the deed of trust pursuant to a mutual mistake between the parties. The trial court voided the deed of trust

4

because the legal description was insufficient to identify the property without recourse to oral testimony and the deed of trust violated Washington's real estate statute of frauds. The trial court awarded Beverly attorney fees and costs and quieted title to the Property against the deed of trust. WSF appeals.

II

Initially, Beverly argues the trial court's findings are verities on appeal because WSF failed to assign error to any of them in its opening brief. WSF contends it dedicated a section of its briefing to each of the challenged findings of fact.

RAP 10.3(g) requires a separate assignment of error for each challenged finding of fact with reference to the finding by number. Beverly is correct that WSF failed to comply with the rule. However, the rules of appellate procedure are to "be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands." RAP 1.2(a). We wield discretion to consider cases and issues on the merits under RAP 1.2. State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). This discretion should be exercised unless there are compelling reasons not to do so. Id. Where the nature of the appeal is clear and the relevant issues are argued, citations provided, and the respondent is not prejudiced, there is no compelling reason for an appellate court to not consider the merits of the case or issue. Id.

WSF references the challenged findings in the text of its opening brief and provides citations. Beverly does not argue she would suffer unfair prejudice if we reach the merits of WSF's appeal. Accordingly, we exercise our discretion and consider the challenges to the findings of fact that are clearly discernable from the brief of appellant.[3]

III

We review a trial court's findings of fact for substantial evidence. Endicott v. Saul, 142 Wn. App. 899, 909, 176 P.3d 560 (2008). Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person that a finding is true. Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 794-95, 432 P.3d 821 (2018). Even where the evidence conflicts, we need only determine " 'whether the evidence most favorable to the prevailing party supports the challenged findings.' " State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 14, 436 P.3d 857 (2019) (quoting Prostov v. Dep't of Licensing, 186 Wn. App. 795, 820, 349 P.3d 874 (2015)). We do not reweigh the evidence or the credibility of the witnesses on appeal. Id. at 15.

A

WSF challenges findings of fact 51 and 52, which state,

> 51.    Beverly testified that she does not recall signing the Deed of Trust. The Court finds her credible regarding her lack of memory on this issue. Nevertheless, the Court finds, based on the

---

[3] WSF challenges the trial court's finding that Beverly's testimony at trial was credible. Because credibility determinations are not reviewed on appeal, State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 15, 436 P.3d 857 (2019), we decline to review this finding.

testimony of Ms. Lam and the presence of what appears to be Beverly's signature on the Deed of Trust, that Beverly did in fact sign the Deed of Trust.

52.    Beverly also credibly testified that she never would have knowingly encumbered the Hopkins Trust property, including her home, with the Deed of Trust, particularly since the Deed of Trust secured Robert's personal loan, and since the entire purpose of the Trust was to protect the family's assets from Robert's poor financial decisions.

Beverly testified the signature on the deed of trust looked like her signature, but she did not remember signing it. Lam testified she believed Beverly signed the deed of trust. When asked if she intended to encumber her home with the deed of trust, Beverly testified, "No way would I do that. I was getting ready to retire . . . I wouldn't sign for a loan." The trial court's findings are supported by substantial evidence.

B

WSF argues the trial court erred in finding that "[w]hile he visited Seattle occasionally, Robert did not permanently relocate to Seattle until late 2014, a few months before his death in May 2015." We agree.

At trial, Beverly provided no testimony as to when Robert relocated back to Seattle.[4] The finding is unsupported. However, "[e]ven if a trial court relies on erroneous or unsupported findings of fact, immaterial findings that do not affect its conclusions of law are not prejudicial and do not warrant reversal." State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018). At oral argument, the

---

[4] Beverly testified Robert relocated to Seattle in 2014 in a declaration she submitted in response to WSF's motion for summary judgment. However, that declaration was not admitted at trial.

7

parties conceded that whether Robert relocated to Seattle in 2014 was immaterial in determining any of the legal conclusions that the trial court made.[5] Therefore, the trial court's erroneous finding was harmless and does not warrant reversal.

IV

WSF argues the trial court erred in denying its reformation claim. We disagree.

Mutual mistake will support reformation of a contract where the contracting parties had identical intentions but the writing materially varies from that intent. Denny's Rests., Inc. v. Sec. Union Title Ins. Co., 71 Wn. App. 194, 212, 859 P.2d 619 (1993). A mistake is a belief not in accord with the facts. Simonson v. Fendell, 101 Wn.2d 88, 91, 675 P.2d 1218 (1984). The party seeking reformation must show by clear, cogent, and convincing evidence that there was a mutual mistake. Keierleber v. Botting, 77 Wn.2d 711, 715-16, 466 P.2d 141 (1970). Clear, cogent, and convincing evidence is a quantum of proof that is less than "beyond a reasonable doubt," but more than a mere "preponderance." Davis v. Dep't of Lab. & Indus., 94 Wn.2d 119, 126, 615 P.2d 1279 (1980). In determining whether mutual mistake supports reformation, "courts will look into the surrounding circumstances, and will take into consideration all facts which throw light upon the intention of the parties." Akers v. Sinclair, 37 Wn.2d 693, 704, 226 P.2d 225, 231 (1950). Parol evidence is admissible for this purpose. Id.

---

[5] Wash. Ct. of Appeals oral argument, Wilmington Sav. Fund Soc'y FSB v. Hopkins, No. 85352-0-I (April 23, 2024), at 15 min., 53 sec. to 16 min., 39 sec., 18 min., 7 sec. to 18 min., 14 sec., https://tvw.org/video/division-1-court-of-appeals-2024041200/?eventID=2024041200.

WSF, as the party seeking reformation, had the burden of proving that the parties had an identical intention as to the terms to be embodied in the deed of trust. Beverly testified she created the Trust "[t]o keep [Robert] from getting into debt again and getting it against the house so we wouldn't have to put the house in jeopardy. It was to secure the house for the future for us, me and the kids," and she did not intend to encumber her home with the deed of trust. WSF provided no direct evidence of BOA's intention at the time of contracting or that it was Beverly's intention to encumber the Property with the deed of trust. It points merely to other language in the deed of trust that it says supports an inference that Beverly intended to encumber the Property. This court defers to the trial court's weighing of all the evidence, Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007), aff'd, 168 Wn.2d 738, 239 P.3d 567 (2009), and its finding, as trier of fact, that WSF's proffered inferences set against Beverly's credible testimony to the contrary failed to rise to clear, cogent, and convincing evidence that the parties labored under a mutual mistake. The trial court's legal conclusion that reformation was not available is supported by its findings of fact.

V

WSF argues the trial court erred in voiding the deed of trust for an insufficient legal description.

A

WSF argues the trial court abused its discretion by considering Beverly's challenge to the legal description because it was first raised at trial. We disagree.

9

Under CR 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." This court reviews a trial court's CR 15 ruling for an abuse of discretion. Herron v. Trib. Publ'g Co., Inc., 108 Wn.2d 162, 165, 736 P.2d 249 (1987). "A trial court abuses its discretion if its decision rests on unreasonable or untenable grounds." In re Estate of Evans, 181 Wn. App. 436, 451, 326 P.3d 755 (2014).

WSF did not seek, either before or during trial, to bar argument on the insufficient legal description as outside the pleadings. To the contrary, in its rebuttal closing, WSF argued that the insufficient legal description was "not relevant defenses in this case because that's not the claim before the Court." Because WSF consented to trial of the issue and argued its merits, the issue was tried by the express consent of the parties and must be treated as raised in the pleadings.

WSF argues for the first time in this court that it was prejudiced by the late assertion of the claim, it required additional discovery, it required expert opinion, and the part performance doctrine excused compliance with the statute of frauds. None of these contentions were raised in the trial court and therefore all of them were waived. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."). The trial court did not abuse its discretion by considering the insufficient legal description argument.

B

WSF argues the trial court erred in declaring the legal description insufficient because "there was no objective evidence or expert opinion at trial regarding what in fact was the proper legal description of the Property." We disagree.

WSF alleged three times that the Property had the same legal description as shown in the statutory warranty deed and the quitclaim deed. These deeds, as well as the deed of trust, were admitted as exhibits, and the first two had the same legal description identifying the plat by its full name and by volume and page. The deed of trust diverged from the legal description shown in WSF's own allegations and the two admitted deeds, appears to have a typographical error in the name of the plat, and fails to identify the locality of the recording of the plat. Substantial evidence supports the trial court's finding that the legal description within the deed of trust was insufficient.

VI

WSF argues the trial court erred in awarding Beverly attorney fees because "[c]ourts, including those in the Ninth Circuit, have declined to interpret their reciprocity statutes as requiring enforcement of a fees provision from an unenforceable contract." We disagree.

We review "de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity." Falcon Props., LLC v. Bowfits 1308, LLC, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020). Attorney fees may be awarded

if "authorized by statute, contract, or recognized ground of equity." Gray v. Pierce County Hous. Auth., 123 Wn. App. 744, 759, 97 P.3d 26 (2004). Here, the deed of trust contained an attorney fee provision: "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument."

WSF cites Glepco, LLC v. Reinstra, 175 Wn. App. 545, 565, 307 P.3d 744 (2013) to argue that nonlenders in a reformation action may not recover under the same attorney fee provision as in the deed of trust. In Glepco, borrowers defaulted on a loan secured by a deed of trust, and the property was sold at a trustee sale. Id. at 550-51. The purchasers brought an action to quiet title, seeking to reform the deed of trust due to a scrivener's error with respect to the legal description of the property. Id. at 553. The court granted reformation and the purchasers sought attorney fees based a provision in the deed of trust, identical to the provision here. Id. at 549, 565. The court denied the request, ruling that "[t]he quoted language provides no basis for awarding fees to the [purchasers]; it provides for fees to the *lender* in an action to construe or enforce the deed of trust. Id.

Glepco does not address RCW 4.84.330, which states that in any action on a contract, "where such contract or lease specifically provides that attorneys' fees . . . shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees." Glepco is distinguishable because the purchasers in Glepco were not party to the original deed of trust, whereas here, Beverly was.

12

Further, under RCW 4.84.330, the prevailing party in a contract action is entitled to reasonable attorney fees even if the court has declared a contract void. <u>Stryken v. Panell</u>, 66 Wn. App. 566, 572, 832 P.2d 890 (1992). The trial court did not abuse its discretion by awarding Beverly attorney fees.

Beverly also requests reasonable attorney fees under RAP 18.1. Because Beverly complied with RAP 18.1, she is the prevailing party, and the terms of the deed of trust entitle her to an award of attorney fees, we award her reasonable attorney fees subject to her further compliance with RAP 18.1(d).

Affirmed.

_Birk, J._

WE CONCUR:

_Coburn, J._      _Hazelrigg, ACJ_

13