[No. 31683. Department One. October 29, 1951.]

CARL LOFBERG et al., *Respondents,* v. G. W. VILES *et al., Appellants.*[1]

[1]Reported in 236 P. (2d) 768.

J. M. *Cunningham* and C. D. *Cunningham,* for appellants.

J. A. *Vander Stoep* and *Hull & Armstrong,* for respondents.

FINLEY, J.—Appellants, G. W. Viles and Ethelind Viles, owned a house and lot in McFadden's Addition to Chehalis. Respondent Dr. Carl Lofberg talked with Mr. Viles in regard to purchasing the property. After some negotiations, Dr. Lofberg met Mr. Viles at his place of business and they went to the latter's home to discuss the details of the sale. These were agreed upon.

Dr. Lofberg thought some sort of a written agreement was needed. He telephoned a banker acquaintance and inquired as to what a written real-estate contract of sale should contain. Apparently, Dr. Lofberg was advised, and thereupon informed Mr. Viles, that such a contract should cover the date of the transaction, a description of the property, the amount of the down payment and the balance due, the date of possession by the purchaser, and that it should be signed by both Mr. and Mrs. Viles. This was good legal advice as far as it went, although no lawyer appears to have been consulted. That came later, after trouble developed between the parties. A contract was promptly drafted by Mr. Viles, then signed by him and his wife. Dr. Lofberg read it, seemingly was satisfied, and gave his check for one thousand dollars to the sellers. This contract reads as follows:

"Received from C. Lofberg, one thousand dollars as Down Payment on House & Lot. Location Lots (1) & (2) & (15') of Lot 3. All in Block (18) of McFaddens Second Addition to Chehalis total Price $17,000.00 Bal. to be paid on or before July 15, 1950 or on possession of property.

"Wesley Viles
"Ethelind Viles"

It should be noted here that the legal description contained in this contract differs from the legal description set forth in the deed by which the sellers had obtained title to the prop-

erty. The description in that deed unquestionably was more explicit. It reads as follows:

"Lots one (1), two (2), and fifteen (15) feet off the easterly side of Lot three (3), all in Block eighteen (18), McFadden's Second Addition to Chehalis, Lewis County, Washington."

The testimony is in conflict as to where this deed was when the homemade contract was written. Sellers contend that, although the deed was somewhere in the house at that time, the description was put down from memory and that there was no deed before Mr. Viles when he drafted the contract. Purchasers contend that the deed in question was in front of Mr. Viles while he was engaged in writing the contract; that he used the deed as the basis for the legal description in the questioned contract, supposedly copying the legal description as set forth in the deed.

Shortly after execution of the contract, sellers attempted to avoid the sale. They offered to give back the down payment and, in addition, to pay purchasers five hundred dollars for "any trouble that had been caused." Purchasers refused to cancel. They later tendered payment of the balance of the purchase price and indicated that they were ready, able, and willing to consummate the sale. Thereafter, they brought suit, asking for reformation of the contract and specific performance.

The trial court granted the relief sought by the purchasers, reforming the contract and decreeing specific performance. The sellers have appealed.

Upon comparison of the contract in question and the deed by which the sellers received their title, it will be noted that there are several differences in the legal descriptions contained in the two documents. The contract fails to name the county and the state in which the property is located. Furthermore, the contract does not precisely designate which fifteen feet of lot three the parties intended to include. The deed states that the property is in Lewis county, Washington, and describes the portion of lot three as the "fifteen (15) feet off the easterly side of Lot three (3)." The trial

court took judicial notice of the fact that Chehalis is in Lewis county, Washington, and reformed the contract with respect to the fifteen feet of lot three by describing it more precisely as the "easterly 15 feet of even width of Lot three (3)." It is contended by the purchasers that, during the trial, counsel for the sellers waived any objection on this latter point.

Two significant questions are raised in this appeal: (1) May the omission of the name of the county and the state from a description in a written contract for the sale of platted real property be supplied by the doctrine of judicial notice where the name of the city is indicated? (2) May the deed be reformed and the words "easterly" and "of even width" be added on either of the following grounds, (a) estoppel or waiver, (b) mutual mistake?

It is our opinion that the name of the county and the state may be supplied by judicial notice; that there may have been a waiver respecting the other alleged insufficiencies, but irrespective of such waiver, where the contract is validated or the requirements of the statute of frauds are satisfied by judicially noticing or supplying the name of the county and state, the legal description of the property may be reformed as to other insufficiencies on the ground of mutual mistake, provided the fact of a mutual mistake is established by clear and convincing evidence.

In taking judicial notice that Chehalis is in Lewis county, state of Washington, the trial court followed *Schmidt v. Powell,* 107 Wash. 53, 180 Pac. 892; and *Chapman v. Milliken,* 136 Wash. 74, 239 Pac. 4. In the former we held that the superior court of Yakima county should have taken judicial notice of the well-known fact that Wapato is a town in Yakima county. The latter case, an action for reformation and specific performance, involved a legal description which read:

" 'The property in Spokane County, State of.................................
is referred to as . . . Sec. 20 T. 28, R. 4, containing 160 acres, known as the Bartlett Homestead.' " (p. 75.)

Referring to the omission of the word "Washington" and to the error in description, that is, "R. 4" instead of "R. 44," this court said at page 81:

"We take judicial notice that Spokane county is in the state of Washington, and that range 4 could not possibly be in Spokane county . . . . Such an error in description is subject to rectification."

Appellants contend that our opinion in *Martin v. Seigel,* 35 Wn. (2d) 223, 229, 212 P. (2d) 107, precludes application of the doctrine of judicial notice in regard to insufficiencies in descriptions of platted real property. In that case, the property was described by street and number instead of by lot and block. The description was otherwise correct. There was no omission of the name of the city, county, or state. A significant difference between the instant case and the *Martin* case is that, while in the latter only specific performance was asked, the prayer is for both reformation and specific performance in the instant case.

*Martin v. Seigel* is not in conflict with the judicial notice cases. Those cases are applicable and controlling. The proposition is well stated in the case of *Schmidt v. Powell, supra,* at page 56, as follows:

"This result does not trench upon the rule as announced by this court in other cases involving the sufficiency of descriptions contained in various instruments, including brokerage agreements; for, in determining the adequacy of the description here, no resort to parol testimony has been necessary. We have the description contained in the instrument, accompanied by the recognition of those facts which the court is bound to know, rendering the description full, adequate, and complete."

■ With the words "Lewis County, Washington" supplied by judicial notice, the contract in the instant case satisfies the basic requirements of the statute of frauds.

■ The amended statement of facts indicates that the parties agreed that, if the contract was made valid by the inclusion of the name of the county and the name of the state by judicial notice, then its other alleged insufficiencies could be corrected by the addition of the words "easterly" and "of

even width." Aside from the possibility of a waiver, we believe the indicated corrections may be made in this case and the contract reformed on the ground of mutual mistake. Where there has been a mutual mistake, reformation is a proper remedy to effectuate the true intent of the parties by correcting errors in a legal description. *Rosenbaum v. Evans*, 63 Wash. 506, 115 Pac. 1054; *Moeller v. Schultz*, 11 Wn. (2d) 416, 119 P. (2d) 660; *Kaufmann v. Woodard*, 24 Wn. (2d) 264, 163 P. (2d) 606; *Geoghegan v. Dever*, 30 Wn. (2d) 877, 194 P. (2d) 397; *Bacon v. Gardner*, 38 Wn. (2d) 299, 229 P. (2d) 523.

We have uniformly held that conveyances of real property may be reformed on the ground of mutual mistake where such mistake is indicated by clear and convincing evidence. *Geoghegan v. Dever, supra*; *Fay v. Best*, 137 Wash. 1, 241 Pac. 354; *Bacon v. Gardner, supra*.

Appellant, Mr. Viles, who is contending that the legal description in the real-estate contract is inadequate, and who seeks to rescind or avoid the sale, testified in the trial court as follows:

"Q. Mr. Viles, why didn't you put in the description, '15 feet off the easterly side of Lot 3?' [Objection was made to this question but was overruled by the Court] A. You asked me why I didn't put in 15 feet— Q. The easterly 15 feet. A. I didn't suppose it was necessary for that at that time. Q. You didn't suppose it was necessary? A. No, because it was Lot 1 and 2 and 15 feet off Lot 3. Q. But your deed said 15 feet off the easterly side of Lot 3? A. It naturally would be, it wouldn't be 15 feet off the other guy's property. Q. and that is the 15 feet you had reference to when you drew up Plaintiff's Exhibit 1? [Referring to the real estate contract in question] A. Well, it would be 15 feet next to Lot 2, 15 feet of 3, that is definitely what it says there."

In view of the foregoing testimony, there can be no doubt that the appellants understood what property was being conveyed. Furthermore, it is apparent that appellants believed that the real-estate contract adequately described the property to be conveyed, and that it clearly reflected the intentions of the parties relative to the property and the sale thereof. The above testimony clearly and convincingly

establishes the fact that a mutual mistake was made in the drafting of the written real-estate contract.

We can see nothing erroneous or inequitable in the decree of the trial court (1) in judicially noticing or recognizing the simple fact, known to most adult citizens of this state, that Chehalis is a city, located in Lewis county, in the state of Washington; (2) in reforming the contract on the ground of mutual mistake, where the latter fact was established by evidence that was clear and convincing. The decree of reformation and specific performance is affirmed.

SCHWELLENBACH, C. J., HILL, and DONWORTH, JJ., concur.

[1]Reported in 236 P. (2d) 776.