[No. 35747.    Department One.    January 25, 1962.]

TENCO, INC., *Respondent,* v. JULIA D. MANNING, *Appellant.*[*]

[*]Reported in 368 P. (2d) 372.

*Chan, Cafferty, Bonnell & Uhlman,* for appellant.

*MacDonald, Hoague & Bayless,* for respondent.

FINLEY, C. J.—In this action, based on a real-estate earnest-money agreement, the trial court ordered the defendant-owner and purported vendor to convey certain real property to plaintiff-purchaser, Tenco, Inc. This appeal by the defendant-vendor followed.

Appellant, purported vendor, is a resident of Baker, Oregon, and owns real property situated in Island County, Washington, which may be legally described as follows:

"Lots 1 to 15 inclusive and Lot 40, Admiralty Heights, according to the recorded plat thereof in the Office of the Auditor of Island County, Washington, in Volume 5 of Plats, page 8."

Lots 1 to 15, inclusive, and Lot 40 amount to approximately *twenty acres.* The above-referenced Admiralty Heights tract, in its entirety, comprises approximately *fifty acres.*[1]

Appellant, desiring to sell her *twenty acres,* executed a listing agreement with a licensed real-estate broker. One of the broker's salesmen, acting as agent for appellant, arranged for representatives of Tenco to view the property. Tenco was in the market for real property in the

---

[1]Familiarization with the recorded Plat of Admiralty Heights reproduced in the Appendices attached hereto will aid in understanding the facts of this case. Appendix A contains a diagram of Lots 1 through 15 and Lot 40, which are owned by appellant, and are the subject of the controversy herein involved. Appendix B contains a diagram of the remaining lots in Admiralty Heights. Notice that the description appearing to the left of Lot 40 in Appendix A contains the metes and bounds description of the entire Admiralty Heights area. The relative position of all lots can be ascertained by observing the location of Lot 16 and Lot 39 in each diagram.

area, and made an offer. The salesman gave Tenco a purported legal description of appellant's property, and a document was prepared, which embodied Tenco's offer in writing and which was to become the earnest-money agreement involved in this dispute.

In accordance with the terms of the contract, Tenco paid appellant the sum of one thousand dollars as earnest money. Appellant covenanted to convey title within ten days after delivery of a title report showing an insurable title. Subsequently, a title report was issued showing an insurable title relative to *the property owned by appellant,* and Tenco tendered the balance due. Thereupon, appellant refused to convey title, and Tenco brought this action for a decree compelling appellant to convey title to the property owned by her, and for "such other and further relief as to the court seems just." The property description in the complaint was taken from the title insurance report. A copy of the earnest-money agreement was attached to the complaint. The agreement contained the description of the property given Tenco by appellant's agent, which was as follows:

"Beginning at the SW corner of Govt. Lot 2, Sec. 27, Township 29 N, R 2 EWM, Island County, Washington, said point being a concrete monument from which the SE corner of said Lot 2 bears N 89° 06′ E 1320.87 ft., thence N 0° 22′ E 811.53 ft., thence S 89° 38′ E 30 ft., thence N 25° 39′ 30″ E 1413.28 ft. to northerly boundary of Govt. Lot 1, said Sec. 27; thence N 88° 44′ 10″ E 692.88 ft., to the NE corner of said Lot 1; thence S 0° 31′ 20″ W 2079.88 ft. to the SE corner of said Lot 2, thence S 89° 06′ W 1320.87 ft. to the true point of beginning."

Appellant's answer admitted ownership of Lots 1 to 15, inclusive, and Lot 40 in her separate capacity; that the salesman acted as her agent; and that she had signed a written instrument designated as an earnest-money agreement. As an affirmative defense, appellant alleged facts which, if proved, would amount to fraud.

Prior to trial, on a motion by Tenco for summary judgment, the court questioned whether the description by

platted lots, taken from the title report and reflected in the complaint, described the same property as the metes and bounds description in the earnest-money agreement. It was then discovered that the legal description in the earnest-money agreement encompassed the entire fifty-acre plat of Admiralty Heights, within which appellant's twenty acres were located.

After a partial summary judgment was awarded Tenco, the case went to trial, and appellant was ordered to execute and deliver a deed to Tenco, conveying the real property owned by her as described in the *complaint*.

The trial court found that the contract price was not unreasonably low in relation to the market price at the time of sale, and that Tenco did not engage or participate in any kind of fraud or misrepresentation in its relations with appellant. The contention that the earnest-money agreement was insufficient to satisfy the statute of frauds was rejected on the theory that the description therein was sufficient, even though additional property was described, and that

" . . . [Tenco] waived its right to object to any defect of title of . . . [appellant] to the remainder of the property in excess of the 20 acres (Lots 1 to 15, inclusive, and Lot 40, Admiralty Heights) which the parties intended to sell and buy."

The assignments of error, according to appellant, raise the following questions: Whether Tenco had complied with all conditions of the contract before tendering the balance due; whether the contract was so unconscionably unfair and unjust as to prevent equity from granting specific performance; whether there is sufficient proof that a mutual mistake occurred; and whether the earnest-money receipt and agreement is void and unenforcible under the statute of frauds.

▮ Two of appellant's contentions can be disposed of summarily. There is substantial credible evidence in the record to support the trial court's findings that (1) Tenco had satisfactorily completed performance of the contract before tendering the balance due; and (2) that the fair

market value of the appellant's property, as of the date of the earnest-money agreement, was not substantially or unreasonably greater than the purchase price therein specified, and that the contract was fairly entered into. We will not disturb these findings. *Guyton v. Temple Motors, Inc.* (1961), 58 Wn. (2d) 828, 365 P. (2d) 14; *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183. Therefore, appellant's contentions in this connection are not tenable on appeal.

■ That the wrong property description appearing in the earnest-money agreement resulted from a mutual mistake is obvious from the record. Neither party was aware that the description in the agreement pertained to the entire Admiralty Heights area until the proceedings were in progress on motion for summary judgment just prior to actual full-scale trial. The complaint sought a decree compelling conveyance of only those lots owned by appellant (Lots 1 through 15, and Lot 40), which Tenco intended to purchase. The answer admitted the execution of the contract, and presented the affirmative defense of fraud. The answer set up no defense that the contract was unenforcible by reason of the statute of frauds. Subsequently, appellant admitted that she was the owner of Lots 1 through 15, and Lot 40; that these lots constituted all her real property in the vicinity; and that she intended to sell all of the land owned by her. It is, therefore, abundantly clear that the parties intended the earnest-money agreement to cover Lots 1 through 15, and Lot 40, and not the entire tract of Admiralty Heights. If the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention, then a mutual mistake has occurred. *Bergstrom v. Olson* (1951), 39 Wn. (2d) 536, 236 P. (2d) 1052; *Keesling v. Pehling* (1950), 35 Wn. (2d) 624, 214 P. (2d) 506.

Appellant's last contention presents the crucial issue in this appeal. Is the property description contained in the earnest-money agreement violative of the statute of frauds? The determination of this issue will provide the solution

to the ultimate problem; namely, whether an earnest-money agreement can be specifically enforced when the property description contained therein, because of a mutual mistake, actually describes property in addition to that which the parties intended to buy and sell. The answer requires a review of the case law in this jurisdiction.

■ As a preliminary observation we note that, although the trial court's decision is couched in terms of waiver, for all practical purposes the relief granted was reformation. This relief was certainly within the pleadings, because the complaint requested not only specific performance but "such other and further relief as to the court seems just." The trial court may have refrained from using the term "reformation" because of confusion existing in the decisions of this court with respect to application and availability of this legal concept under the circumstances in the instant case. In any event, even though a judgment of a trial court is based upon a theory which an appellate court may deem inappropriate; nevertheless, if the judgment can be sustained on any ground, it will be affirmed. *Jones v. Standard Sales* (1949), 34 Wn. (2d) 546, 209 P. (2d) 446; *Nadreau v. Meyerotto* (1950), 35 Wn. (2d) 740, 215 P. (2d) 681.

■ The classic case in Washington law with respect to property description problems is, of course, *Martin v. Seigel* (1949), 35 Wn. (2d) 223, 212 P. (2d) 107, 23 A. L. R. (2d) 1. It was there held that an earnest-money agreement containing a description of certain property by street number, city, county, and state, was insufficient to satisfy the statute of frauds, and that the contract was, therefore, unenforcible. The court volunteered a rule for determining whether descriptions of platted property were sufficient by indicating that a memorandum must contain "the description of such property by the correct lot number(s), block number, addition, city, county, and state." *Martin v. Seigel* has since been qualified to a certain extent,[2] but,

---

[2]See *Lofberg v. Viles* (1951), 39 Wn. (2d) 493, 236 P. (2d) 768; *Bingham v. Sherfey, infra.* See, also, Shattuck: *Contracts in Washington, 1937-1957: Part II,* 34 Wash. L. Rev. 345, 358 (1959).

along with *Bingham v. Sherfey* (1951), 38 Wn. (2d) 886, 234 P. (2d) 489, which sets forth description requirements for unplatted property, and other cases,[3] it stands for the general proposition that compliance with the statute of frauds in land transaction contracts or deeds requires a description of land sufficiently definite to locate it without recourse to extrinsic evidence or else reference must be made to another instrument which does contain a sufficient description. *Bigelow v. Mood* (1960), 56 Wn. (2d) 340, 353 P. (2d) 429.

This rule for determining whether a legal description properly conforms to the requirements of the statute of frauds, however, is inapplicable when an erroneous description appears in a document because of a mutual mistake. "Until the memorandum document is made to say what the parties intended it to say, invocation of the Statute of Frauds is premature." Shattuck: *Contracts in Washington, 1937-1957: Part II,* 34 Wash. L. Rev. 345, 360-61 (1959). The document may be reformed to reflect fairly the intention of the parties before the test to determine the legality of the description is applied, once it is established that the defect was the product of a mutual mistake. *Platts v. Arney* (1955), 46 Wn. (2d) 122, 278 P. (2d) 657; *Lofberg v. Viles* (1951), 39 Wn. (2d) 493, 236 P. (2d) 768; *Bacon v. Gardner* (1951), 38 Wn. (2d) 299, 229 P. (2d) 523; *Peterson v. Paulson* (1945), 24 Wn. (2d) 166, 163 P. (2d) 830; *Chapman v. Milliken* (1925), 136 Wash. 74, 239 Pac. 4.

There is language in *Fosburgh v. Sando* (1946), 24 Wn. (2d) 586, 166 P. (2d) 850, which seems to indicate that reformation is not available under any circumstances where a contract or deed reflects a defective property description, but we do not deem that case controlling. It was based in large part upon *Martinson v. Cruikshank* (1940), 3 Wn.

---

[3]*Schweiter v. Halsey* (1961), 57 Wn. (2d) 707, 359 P. (2d) 821; *Fosburgh v. Sando,* 24 Wn. (2d) 586, 166 P. (2d) 850; *Barth v. Barth* (1943), 19 Wn. (2d) 543, 143 P. (2d) 542; *Martinson v. Cruikshank* (1940), 3 Wn. (2d) 565, 101 P. (2d) 604.

(2d) 565, 101 P. (2d) 604, which indicated that reformation may be available to correct a defective property description resulting from a mutual mistake. That the court's language in *Fosburgh* was broader than intended is apparent when considered with the fact that reformation was recognized as an available remedy in *Peterson v. Paulson, supra,* reported in the same volume of the Washington Reports.

We hold that a property description which is defective according to the standards long recognized by this court may be corrected by reformation when the defect resulted from a mutual mistake. The earnest-money agreement in the instant case, reformed to reflect the intentions of the parties, is not violative of the statute of frauds and is, therefore, a valid legal property description. The decision of the trial court is affirmed.

WEAVER and FOSTER, JJ., concur.

ROSELLINI and OTT, JJ., concur in the result.

## APPENDIX A

PLAT OF

# ADMIRALTY ᴵᴺ HEIGHTS

## GOV'T. LOTS 1 & 2 SEC. 27, TWP. 29 N., R. 2 E.W.M.

✛ CONCRETE MONUMENTS

SHEET 1 OF 2

SCALE 1" = 100'
UNPLATTED

### TION

'HESE PRESENTS, that Arthur his wife, Kermit W. Ellison and , Ernest A. Manning and Julia art Ballinger and Florence ersigned, owners in fee simple of ereby declare this plat and dedicate to the l streets, places and/or whatever own on the plat and the use thereof is not inconsistent with the usu urposes, also the right to make all and fills upon the lots, blocks, tracts a reasonable original grading of t hereon  Also the right to drain all st or lots where water might take a -eet or streets are graded, All lots mbraced in this plat are subject to the following resrictions'— f construction of all structures , by the grantor or a party or nd will conform to the following— e each lot, excepting lots 35 to ded, in which case only one dwelling . ll be allowed, said dwelling to be a foundation of monolithic, brick. n.  An approved standard exterior ng within eighteen months after Design of dwelling and all accessory lly designed in harmony with structures Euch residence in this plat shall be sosal system of the septic-tank type on meeting the minimum property by the State Department of d to be of a design not to permit on top of the ground or in open ll be used for business purposes nanent structure or building shall -eet or parcel of this plat closer than gin of any street or road. No lot or' this plat shall be divided and sold, changed or Transferred, whereby ion of this plat shall be less than than 60 feet in width at it s

we have hereunto set our hands f _____ AD 1954

_Ernest A. Manning_
_Julia McManning_
_Kermit W. Ellison_
_Floren W. Nelson_

### JOWLEDGEMENT

it on the 11th day of _October_ A D 1954 ned, a Notary Public in and for the State of med and sworn, personally appeared, Arthur E. if- Kermit W Ellison and Clarita B Ellison his wife. . Robert Ballinger and Florence in to be the individuals described in and who ument and acknowledged to me that they signed ' free and voluntary act, and deed, for the uses and

have hereunto set my hand and seal the day and

_Albert W. Levine_
Notary Public in and for the
State of _Washington_ Co.
Residing at _____

### DESCRIPTION

Beginning at the South west corner of Lot 2, Section 27, Township 29 North, Range 2, E W.M., said point being a concrete monument and from which the South-east corner of said Lot 2 bears N 89°-06'E 1320 87 feet. Thence N 0°-22'E 811 53 feet; thence S 89°-38'E 30 00 feet thence N 25°-39'-30 E 1413 28 feet, to the North Boundary of Lot 1, Section 27, thence N 88°-44'-10'E 692 88 feet to the ' North-east corner of said Lot 1, thence S 0°-51'-20 W 2075 88 feet, to the South-east corner of Lot 2 Section 27, thence S 89°-06'W 1320 87 feet to the True Point of Beginning.

## APPENDIX B

PLAT OF

# ADMIRALTY -IN- HEIGHTS
### GOV'T. LOTS 1 & 2 SEC. 27, TWP. 29 N., R. 2 E.W.M.

PLAT OF MUTINY BAY SHORES,
Vol 4, Pgs 52 Plats