IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WATER WORKS PROPERTIES, LLC, a Washington limited liability company, | ) ) ) | No. 33332-9-III (Consolidated with No. 33825-8-III) |
| Appellant, | ) ) | |
| v. | ) ) | |
| WILLIAM DEAN COX and JOY K. COX, husband and wife; SIXTH GENERATION, LP, a Washington limited partnership; HIGH TOP CHERRIES, INC., a Washington corporation; ROCKING ARROW FRUIT, INC., a Washington corporation; and TWIN W ORCHARDS, INC., a Washington corporation, | ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) | |

KORSMO, J. — After a lengthy trial to the bench, followed by a supplemental hearing, the trial court entered extensive factual findings primarily in favor of the respondents/cross-appellants, William Cox and his associated business entities (Cox). Appellant Water Works Properties and its principal, John McQuaig (hereafter McQuaig), raise several issues in this appeal. We affirm the trial court in all regards and award respondents their fees in this court for the defense of the appeal.

No. 33332-9-III (consolidated with No. 33825-8-III)
*Water Works Properties, LLC v. William Cox et ux, et al*

## BACKGROUND

The facts are well known to the parties and will not be recited here except in a barebones fashion as necessary to explain some of our (also succinct) legal analysis.[1] The case arose out of the business relationship between Cox, an orchardist, and McQuaig, a local accountant and banker. When Cox ran into financial difficulties, McQuaig lent money to him and purchased some Cox assets, eventually moving into the business himself and operating part of the former Cox property as his own orchard.

After additional financial problems arose, some allegedly caused by McQuaig, Cox defaulted on his obligations and, eventually, filed for bankruptcy. McQuaig sued and Cox countersued. The case ultimately proceeded to bench trial before the Honorable John Hotchkiss. The trial judge expressed reservations about the credibility of both sides, but particularly found McQuaig lacked credibility. As relevant to this appeal, the trial court concluded that McQuaig had no fiduciary duty to Cox and that Cox had defaulted on a $150,000 promissory note. The court ordered an orchard boundary line adjustment consistent with the Cox position that the boundaries should follow irrigation lines. It awarded Cox damages for McQuaig's conversion of personal property and breach of the

---

[1] We intend no disrespect to the parties, who have provided an extensive record and briefed the case quite thoroughly, leading to significant work by the judges and staff of this court. This opinion is intended to be nonprecedential and extended discussion of the facts of the case has been avoided lest others be tempted to rely on it.

2

orchard lease and real estate contract. The court also rejected other claims raised by both

McQuaig and Cox. It retained jurisdiction for a supplemental hearing to determine the

precise legal description of the boundaries and the value of the converted equipment,

matters that eventually were resolved largely in favor of Cox. Cox was also awarded his

costs and attorney fees for the supplemental hearing.

When the dust settled, the court entered judgment for Cox for $208,679.90 and for

McQuaig for $194,383.56. That resulted in a net judgment in favor of Cox for

$14,296.34. The court declined to award attorney fees to either party for the trial.

McQuaig then timely appealed to this court and Cox cross appealed the attorney fee

ruling. A panel of this court heard oral argument.

## ANALYSIS

McQuaig's appeal raises five issues, while the Cox cross appeal raises one. After

a preliminary comment, we address the first four issues in the order presented by

McQuaig before turning to the fifth issue that also is the issue presented by the cross

appeal.

Some basic principles govern the majority of the issues before us, which largely

are factual in nature. Unchallenged findings are considered verities on appeal. *In re

Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004); *Smith v. Emp't Sec. Dep't*, 155 Wn.

App. 24, 33, 226 P.3d 263 (2010). Findings of fact will be upheld when they are

supported by substantial evidence. *Dorsey v. King County*, 51 Wn. App. 664, 668-669,

754 P.2d 1255 (1988). Substantial evidence is that evidence which "would persuade a fair-minded person of the truth or correctness of the matter." *Smith*, 155 Wn. App. at 33. These principles undergird most of our decision.

*Boundary Line Adjustment.* McQuaig's complaint alleged that the boundary line adjustment (BLA) needed to "be revised to provide the office building and the property it is located on are owned by the Plaintiff." Clerk's Papers (CP) at 6. At trial, the court revised the BLA along the irrigation lines, as argued by Cox, but deferred its final order until the supplemental hearing[2] while a survey was obtained. McQuaig raises several complaints about the process, but we agree with the trial court. The complaint itself raised the issue, so no more needs to be said about the trial court's authority to revise the existing BLA. Similarly, the court did not err in allowing the parties at the supplemental hearing the opportunity to present formal proof of the boundaries consistent with those ordered at trial.

The more significant challenges raised by McQuaig are contentions that the doctrine of unilateral mistake and the statute of frauds prevented the court from adjusting the boundary to match the irrigation lines. They did not. Unilateral mistake allows a mistaken party to void a contract if the effect of the mistake would render enforcement

---

[2] The hearing itself largely focused on the value of property that was ordered returned to Cox by the court's trial ruling.

4

unconscionable. *Gammel v. Diethelm*, 59 Wn.2d 504, 507-509, 368 P.2d 718 (1962). However, Cox was not mistaken about the intended boundaries for the orchard properties. He had walked the property with McQuaig's representative, marked the boundary lines along the water lines, and had farmed the property for two years without objection from McQuaig. The original surveyors had not walked the property; as a result, their boundary lines, derived from aerial photographs, cut off orchards from their longstanding water supplies and left McQuaig's office on Cox's property. The mistake was in the survey lines, not the boundaries agreed upon by the parties.

As has been noted many times, the "purpose of the statute of frauds is to prevent a fraud, not to perpetuate one." *Powers v. Hastings*, 20 Wn. App. 837, 842, 582 P.2d 897 (1978). Judge Hotchkiss nicely summed up the BLA issue: "The Court does not believe that one can reach an agreement and then provide a survey and legal description that is contrary to that agreement." CP at 3166. The statute of frauds does not apply to a document that fails to reflect the intent of the parties. *Tenco v. Manning*, 59 Wn.2d 479, 485, 368 P.2d 372 (1962). That was the situation here. The trial court correctly concluded that the mistaken survey lines did not evince the intent of the parties and therefore were inapplicable.

The court did not err in reforming the boundaries to reflect the original intent of the parties.

*Lien on Crop.* McQuaig next argues that the court erred in ruling that he violated the orchard lease by putting a lien on the proceeds from the Cox apple sales and in ruling that the need to find alternative financing cost Cox bonus money he otherwise would have earned. The evidence supported the rulings.

McQuaig had intercepted proceeds from the Cox sales because he claimed that Cox had stolen fruit from him—a claim that the court ultimately rejected at trial. With the proceeds intercepted, Cox was unable to use the funds to finance the next season's crop. He then had to turn to Monson Fruit for financing, but one result of financing with Monson was that it made Cox unable to obtain packing bonuses like those it had earned in previous years. Report of Proceedings 1321-1322; CP at 1812. The orchard lease prohibited any liens on the property other than for growing and harvesting the crop; it also entitled Cox to the net proceeds of the crop sale. Ex. 117.

Whether or not the interception of proceeds was truly an improper "lien," it certainly constituted a violation of the "net proceeds" clause of the lease. Accordingly, the trial court had ample evidence to support its determination that McQuaig violated the lease by impounding the funds. Cox's bankruptcy attorney also explained how the need to resort to financing with Monson Fruit cost Cox the bonuses it otherwise would have earned from Monson for packing the crops. That constituted sufficient evidence of the value of the lost packing discounts to justify the award of damages.

6

The trial court did not err when it determined that McQuaig wrongly impounded the sales proceeds and caused Cox additional financing expenses.

*Retainage Checks*. McQuaig also argues that the trial court erroneously found that he had wrongly kept retainage checks from Tree Top and Chelan Fruit to Cox for fruit picked in earlier years. The trial court correctly found that the security interest that McQuaig acted under had been replaced by a new agreement under which McQuaig had no interest in those proceeds.

McQuaig claimed the security interest under a 2007 security agreement.[3] However, subsequent transactions between the parties in November 2009 led to two deeds in lieu of foreclosure that conveyed portions of the orchard between the parties. Those deeds expressly stated that upon delivery, "Debtors shall be fully relieved from liability . . . and Debtors shall have no further liability or obligation to Water Works as a result of the Notes." Exs. 31, 32 (¶ 3). They further noted that it "is the intent of the Parties that the successful completion of this transaction . . . shall fully and completely resolve issues between Water Works and Debtors." *Id.* (¶ 4).[4]

---

[3] The trial court commented concerning the astounding breadth of the agreement asserted by Mr. McQuaig: "it had never seen a security agreement that secures and takes everything owned by the debtor, including his or her underwear." CP at 2452.

[4] Also similar is Ex. 51, an amended agreement concerning the transfers, that expressly states in part that it "shall release the members of the Cox Group from liability to Water Works for all of the WW debt."

7

Substantial evidence supported the trial court's determination that the 2007 security interest had been extinguished in 2009. The trial court did not err in concluding that McQuaig wrongly retained the checks destined for Cox.

*Damages for Conversion of Unreturned and Damaged Property.* The primary subject of the supplemental hearing was the valuation of property either damaged by McQuaig or not returned to Cox. This largely involved equipment such as tractors, sprayers, and trailers that had not been sold to McQuaig, but had been used in the orchards that were sold by Cox to McQuaig. McQuaig claimed either an ownership interest or a security interest in the disputed property.

Without meaning any disrespect to counsel's detailed and involved arguments on this topic, which are more sophisticated than this brief opinion suggests, the most simple answer to these arguments is that the trial court concluded that Cox established that the property belonged to him while McQuaig failed to do so. Exhibit B to Ex. 49 is a depreciation schedule listing some equipment involved in the sale. McQuaig contended that it was not an exclusive list of property, but it is the only listing contemporaneous with the real estate sale that suggests *any* equipment was being sold along with the land.

This exhibit supported the trial court's determination that the other property claimed by Cox was not involved in the sale to McQuaig. Accordingly, the trial court had a basis for determining that McQuaig had used and abused property belonging to Cox, perhaps in the mistaken belief that it had been sold along with the real estate.

However, the sales agreement provides no basis for believing that anything other than the property in Exhibit B was conveyed along with the land.

The trial court did not err in concluding that the converted property belonged to Cox.

*Attorney Fees.* The one common issue raised by the parties involves attorney fees. McQuaig argues that he is entitled to fees for substantially prevailing in the trial court, while Cox makes the same argument in his cross appeal. McQuaig argues that Cox should not have been awarded any fees related to the supplemental hearing, while Cox also seeks fees on appeal. Discerning no abuse of discretion by the trial judge, we affirm the denial of fees for the trial as well as the fees granted Cox for the supplemental hearing. We also award some of the fees requested by Cox in this appeal.

This court reviews a trial court's award of attorney fees for an abuse of discretion. *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). This standard reveals why we affirm the trial court's rulings.

To prevail on this issue, the parties have to explain more than why they believe they prevailed below—they have to show why the trial court's reasoning was untenable. That they cannot successfully do. Both parties correctly point to the numerous issues that they won, either by convincing the trial court of the correctness of their position or by

9

fending off the other side's claims. If the trial court had decided to approach the matter by partitioning issue by issue, it might well have ruled for each party. However, it did not.

The trial judge instead recognized that while both parties had prevailed on significant issues, both had likewise failed on significant issues. Given the total picture of the trial—very intertwined financial dealings for nearly a decade resulting in overlapping trial issues—the trial court could understandably conclude that partitioning fees by the issue would be difficult. Instead, given that there were three separate documents providing for attorney fees, it was a very reasonable approach for the court to look at the total picture and conclude that neither party *substantially* prevailed. The difference between the two recoveries was less than $15,000, suggesting that a trial of this magnitude largely resulted in a draw. Accordingly, the court had very tenable reasons for denying fees. Similarly, since Cox prevailed at the supplemental hearing and fees could easily be partitioned, it was reasonable to award Cox fees related to that event.

Having tenable grounds for its awards, we affirm the trial court's fee rulings. There was no abuse of discretion. Cox is the prevailing party in McQuaig's appeal. We grant Cox his *reasonable* fees expended in the defense of McQuaig's appeal, but not for fees expended in pursuit of the unsuccessful cross appeal. A commissioner of this court will consider the fee award subject to his compliance with RAP 18.1(d).

10

No. 33332-9-III (consolidated with No. 33825-8-III)
*Water Works Properties, LLC v. William Cox et ux, et al*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

11