# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ANDREW OLIVAS and WENDY OLIVAS, husband and wife, | No. 51877-5-II |
| Appellants, | |
| v. | |
| DOUG MEKALSEN and DIANNE MEKALSEN, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Andrew and Wendy Olivas appeal the trial court's judgment granting Doug and Dianne Mekalsen quiet title to a triangular strip of land in Jefferson County. The Olivases argue that the trial court erred by rejecting their claims to quiet title based on the common grantor doctrine. They further argue that the trial court abused its discretion by sua sponte amending the pleadings under CR 15(b) and reforming the Mekalsens' 2003 deed to correct a scrivener's error. The Olivases also argue that the trial court erred by awarding the Mekalsens attorney fees and costs. We affirm.

## FACTS

### I. BACKGROUND

This case involves adjacent rural residential properties in Jefferson County. Prior to 1972, Alyce Schechert Mekalsen, the late mother of Doug Mekalsen, owned both properties. In 1972, Coyle County Road became the western boundary of both properties.

In 1978, Alyce[1] obtained a survey that set out an East-West line between the two properties. In 1984, Alyce's husband, Peter Mekalsen, obtained a recorded survey by Roats Engineering, which laid out the center line of a 60-foot-wide mutual easement road running near or partially upon the East-West line, but dropping south of the East-West line as it approached its westerly end near Coyle County Road. In 1987, Peter began grading a gravel driveway approximately 8 to 10 feet in width and roughly within the 60-foot easement.

The two properties Alyce owned comprised the North ½ of the North ½ of the Southwest ¼ of Sec. 27, T. 26 N., R. 1 W.W.M, in Jefferson County. In 1992, Alyce conveyed "Tax 38" to Moore, which was a parcel entirely within the South ½ of the North ½ of the North ½ of the Southwest ¼ of Sec. 27, T. 26 N., R. 1 W.W.M. Alyce conveyed "Tax 38" by a deed identifying the northern boundary of the parcel as the metes and bounds of the center line of the 1984 60-foot easement road. The deed did not refer to the East-West line or to any road or driveway as the northern boundary line. As a result, "Tax 38" was a trapezoidal shaped parcel, with the westerly boundary along Coyle County Road being 313.07 feet and the easterly boundary being 331.04 feet, and leaving a triangular shaped property south of the East-West line and north of the 1984 easement center line as part of Alyce's property. The cadastral map changed accordingly and property taxes were calculated based on that map.

Sometime in 1993 or 1994, for reasons unknown, the county assessor changed the cadastral map to incorrectly show the northern boundary of "Tax 38" as being the East-West line. Subsequent tax assessments were based on that change.

---

[1] We refer to Alyce and Peter Mekalsen by their first names for clarity and intend no disrespect.

Peter died in 1995, and his three children administered his probate and conveyed the North ½ of the North ½ to the Mekalsens. As a result, the Mekalsens' deed incorrectly included property within "Tax 38." In 1997, the three children executed a correction deed using the East-West line as the southern boundary of the Mekalsens' property, which excluded the "Tax 38" parcel, but this deed inadvertently excluded the triangular piece of property south of the East-West line, leaving it in Peter's estate.

In 2003, the three children executed another correction deed, this time using the metes and bounds description of the 1984 easement center line as the southern boundary. This deed included the triangular shaped property south of the East-West line. However, the caption of the deed incorrectly referred to the North ½ of the North ½ of the North ½, rather than simply the North ½ of the North ½.

That same year, by written agreement of all affected parties, the 1984 60-foot-wide easement was narrowed to 30 feet using the original 1984 center line. As a result, the gravel driveway became located, in part, outside the 30-foot easement, slightly north of the easement.

In 2007, Moore conveyed "Tax 38" to Hartman, who conveyed it to the Olivases. The northern boundary of "Tax 38" remained described as the metes and bounds of the 1984 easement center line. In 2010, the Olivases began to claim the triangular shaped property,[2] and the relationship between the Olivases and the Mekalsens deteriorated.

---

[2] The triangle shaped property has never been used by the parties, other than about eight small trees that were planted there, which the Mekalsens mowed around.

II. LAWSUIT

The Olivases sued the Mekalsens for quiet title and ejectment, claiming the disputed triangle shaped property and arguing that the property line was either the gravel driveway or the East-West line. The Mekalsens counterclaimed for quiet title to the property described in their 2003 deed and against the claims and trespasses of the Olivases, and for "[s]uch other relief, legal and equitable, as the court may deem just and proper." Clerk's Papers at 111.

The Olivases believed that the Mekalsens intended to argue that the disputed property remained in the estate of Mekalsen's late parents, so they filed a motion in limine to limit the Mekalsens from arguing claims not originally pleaded. The Mekalsens responded that they did not intend to make any such claim at trial and that their position remained that they held title to the disputed property based on the metes and bounds legal description in the 2003 deed. Mekalsen stated in a declaration, "I have a deed and Plaintiff's don't. . . . As my attorney and I have said from the beginning, I will stand on my title." CP at 56.

In a motion for shortened notice for hearing, the Mekalsens stated:

> Plaintiffs simply do not accept that Defendants rely on a recorded deed in 2003, which includes a triangular "disputed" portion of property which has never been in Plaintiffs' legal description, and that Defendants are prepared at trial to rely on that recorded deed, for the court to equitably balance against the Plaintiff's unsubstantiated claim that they have been paying taxes on it under a mistaken belief that they owned what their legal description does not include.
>
> We have not changed our theory.

CP at 81.

The trial court granted the Olivases' motion in limine, in part, ruling that the Mekalsens could not argue new claims not originally pleaded and could not offer evidence that the disputed

property was "unclaimed" or "unconveyed" property remaining in the estate of Mekalsen's parents. CP at 93. The trial court further ruled:

> Defendants Mekalsen are limited to evidence that supports their theory that Defendant Mekalsen's title to the disputed area is derived from recorded deeds executed by the heirs and/or co-personal representatives of Mr. Mekalsen's parents or their estate.
>
> IT IS FURTHER ORDERED THAT Defendants' title to the disputed property as conveyed to him, shall be determined by the Court according to legal description or descriptions found admissible at trial by the Court.

CP at 93-94.

At trial, the Olivases argued that the proper boundary line was the center line of the gravel driveway. The Olivases acknowledged the Mekalsens' 2003 deed, but argued that the internal conflict between the caption and the metes and bounds description should be resolved by "looking at what exists on the ground"—the gravel driveway. CP at 129. The Mekalsens argued that their 2003 deed gave them superior title and that equity favored their claim to quiet title.

Several witnesses testified at trial, including Jim Wengler, a professional land surveyor. Wengler testified that if the caption of the Mekalsens' 2003 deed named one less "North ½," it would be consistent with the metes and bounds description of the southern boundary within the 2003 deed as well as the metes and bounds description of the Olivases' northern boundary in the Olivases' deed. Wengler emphasized *Gurdon H. Wattles*, *Wattles Writing Legal Descriptions in Conjunction with Survey Boundary Control* surveying textbook, which states that the caption in a deed limits the detailed description of the property contained therein. 1 Verbatim Report of Proceedings (VRP) at 43. Wengler had not conducted a full survey of the property.

Michael Dunphy, a partner with DC Surveying also testified. Dunphy completed a survey of the Mekalsen-Olivas boundary line in 2016. Dunphy testified that he believed the third "North ½" contained in the 2003 deed was a scrivener's error.

The trial court entered a memorandum opinion detailing its ruling and findings of fact and conclusions of law. The trial court concluded that the Olivases' case was based on taxes they paid on the disputed parcel for many years due to the erroneous revision of the county assessor's cadastral map and on a scrivener's error in the Mekalsens' 2003 deed. The trial court concluded that the Mekalsens were entitled to reform the 2003 deed to remove an unintended and additional "North ½" in the caption to make the caption consistent with the remainder of the deed and amended the pleadings under CR 15(b). The trial court further concluded that the Olivases had "no legal nor equitable theory to justify superior title to that of [the Mekalsens]," and that "[t]he equities clearly favor Doug Mekalsen." CP at 192. The trial court awarded the Mekalsens a judgment for costs and attorney fees.

The Olivases appeal.

## ANALYSIS

### I. LEGAL PRINCIPLES

Findings of fact are reviewed under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000), *adhered to on reh'g*, *Croton Chem. Corp. v. Birkenwald, Inc.*, 50 Wn.2d 684, 685, 314 P.2d 622 (1957). If the standard is satisfied, a reviewing court will not substitute its judgment for that of the trial court even though it may have resolved a factual dispute differently. *Birkenwald, Inc.*, 50 Wn.2d at

685.  Conclusions of law are reviewed de novo.  *See Veach v. Culp*, 92 Wn.2d 570, 573, 599 P.2d 526 (1979).  Findings to which error has not been assigned are verities on appeal.  *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).  Assignments of error without argument or authority to support them are waived.  *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991).[3]

## II.  BOUNDARY LINE

The Olivases argue that the evidence at trial supported their theory that a common grantor established the property boundary at the gravel driveway, and therefore, the trial court erred by concluding that the Olivases had no legal or equitable theory to support their claims of quiet title to the disputed property.  We disagree.

Washington courts recognize that "'[t]he location of a line by a common grantor is binding upon the grantees,'" even when the deed describes a different boundary.  *Pendergrast v. Matichuk*, 186 Wn.2d 556, 564, 379 P.3d 96 (2016) (quoting *Turner v. Creech*, 58 Wash. 439, 443, 108 P. 1084 (1910)).

> A grantor who owns land on both sides of a line he has established as the common boundary is bound by that line.  The line will also be binding on grantees if the land was sold and purchased with reference to the line, and there was a meeting of the minds as to the identical tract of land to be transferred by the sale.  The common grantor doctrine involves two questions: (1) was there an agreed boundary established between the common grantor and the original grantee, and (2) if so, would a visual examination of the property indicate to subsequent purchasers that the deed line was no longer functioning as the true boundary?

---

[3] Although the Olivases did not assign error to the trial court's specific conclusions of law, they did assign error generally to the trial court's ultimate conclusions and the thrust of their briefing articulates their challenge to the trial court's conclusions.  Accordingly, the Olivases' failure to specifically assign error to the trial court's conclusions does not preclude our review.  *Scheib v. Crosby*, 160 Wn. App. 345, 349-50, 249 P.3d 184 (2011).

*Pendergrast*, 186 Wn.2d at 564 (internal citations omitted) (quoting *Winans v. Ross*, 35 Wn. App. 238, 240-41, 666 P.2d 908 (1983)).

The Olivases assign error to the trial court's finding of fact 32[4]: "The Court finds that the location of the '30 foot easement centerline' as the Southern boundary of Defendant's property is credible, and accepts that determination; Plaintiff presented no evidence of any alternative." Br. of Appellant 26 (emphasis omitted) (quoting CP at190). However, the Olivases fail to assign error to the trial court's following finding of facts, making them verities on appeal:

> 5.    In 1984, a recorded survey was done by Roats Engineering for Peter Mekalsen, Alyce's husband, purportedly referring to a "Mekalsen Short Plat" which plat was never carried out; however, the survey did lay out the centerline of a 60 foot wide mutual easement road running near or partially upon the "E-W line", but dropping below that line as it approached its westerly end near Coyle County Road.
>
> 6.    In 1987, Peter Mekalsen graded a gravel driveway approximately 8 to 10 feet in width and roughly within the 60 foot wide easement way; the centerline of that driveway has never been legally described nor referred to as a boundary of any parcel of property.
>
> 7.    In 1992 Alyce Mekalsen conveyed "Tax 38" to Moore, a parcel which was entirely in the S. ½ of the N. ½ of the N. ½, by a Deed with a metes and bounds description, the North line of which was described by metes and bounds as the centerline of the 1984 Roats easement road, but not referring to the E-W line". The legal description did not refer to any road or driveway as the North boundary line.
>
> 8.    The result of the "Tax 38" deed was to create a trapezoidal shaped parcel, with the West boundary along Coyle Road of 313.07 feet and an East boundary of 331.04 feet, leaving the disputed triangular shaped property adjacent to "Tax 38", and South of the "E-W line".

---

[4] Although the Olivases purport to assign error to a number of the trial court's findings of fact, they only provide argument for findings of fact 26, 28, 29, 30, and 32. Assignments of error without argument or authority to support them are waived. *Howell*, 117 Wn.2d at 624. Of the assignments of error supported by argument, only finding of fact 32 pertains to the Olivases' common grantor argument.

CP at 186.[5]

It follows that substantial evidence supports the trial court's finding of fact 32 that the 1984 easement center line formed the southern boundary of the Mekalsens' property. The verities on appeal establish that Moore's deed to "Tax 38" referenced the center line of the easement and not the gravel driveway, and that the gravel driveway—installed three years after the survey for the 1984 easement—has never been legally described or referred to as a boundary.

Accordingly, the record does not support the Olivases' common grantor theory that the gravel driveway was the property boundary line, and the trial court did not err by denying their claim for quiet title. For the gravel driveway to serve as the agreed boundary line, "it must plainly appear that the land was sold and purchased with reference to the line, and that there was a meeting of the minds as to the identical tract of land to be transferred by the sale." *Fralick v. Clark County*, 22 Wn. App. 156, 159, 589 P.2d 273 (1978) (quoting *Kronawetter v. Tamoshan, Inc.*, 14 Wn. App. 820, 826, 545 P.2d 1230 (1976)). Nothing in the record suggests that the Mekalsens established the gravel driveway as the new boundary of the properties. The record contains no evidence that Moore took "Tax 38" believing that the northern boundary line was anything other than the 1984 easement center line as described in his deed. Nor does the record suggest that the parties maintained the property along the gravel driveway as if it were the boundary.

---

[5] The Olivases purport to assign error to finding of fact 6 "in part," but fail to support their assignment with argument or authority; nor do the Olivases specify to which "part" of the finding they assign error. Consequently, the assignment of error is waived. *Howell*, 117 Wn.2d at 624.

The Olivases argue that this case is similar to *Pendergrast*, where our Supreme Court affirmed the trial court's judgment granting quiet title based on common grantor doctrine. There, the trial court rejected the appellant's argument that there was "no evidence that the common grantor actively and purposefully changed the boundary of his or her property, and that change of boundary was made with full knowledge and recognition by the original grantee." Br. of Appellant 28 (quoting *Pendergrast*, 186 Wn.2d at 565-66 (internal quotations omitted)). However, the facts of this case are distinguishable from *Pendergrast*. First, the trial court here found that the evidence *did not* support common grantor doctrine. Second, in *Pendergrast*, the parties' manifestations of ownership of their respective parcels for three years prior to the dispute evidenced that the fence surrounding one parcel, which was installed by a common grantor, established the boundary line. *Pendergrast*, 186 Wn.2d at 566. In contrast here, the trial court did not find that either the Olivases or the Mekalsens manifested ownership of their respective parcels so as to establish location of a line by a common grantor.

We hold that substantial evidence supports the trial court's finding of fact 32, and the findings of fact support the trial court's conclusion denying the Olivases' claims of quiet title.

### III. SUA SPONTE REFORMATION

The Olivases also argue that the trial court abused its discretion by sua sponte reforming the 2003 deed despite the Mekalsens not pleading reformation. We disagree and hold that the trial court did not abuse its discretion in using its equitable authority to correct the 2003 deed.

A.      *Amended Pleadings*

The Mekalsens did not plead reformation in their answer and counter claim. The trial court nonetheless ruled to reform the 2003 deed by relying on CR 15(b) to amend the pleadings,

10

which provides, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." CR 15(b). The rule adds that the failure to formally amend the pleadings "does not affect the result of the trial of these issues." CR 15(b); *Green v. Hooper*, 149 Wn. App. 627, 636, 205 P.3d 134 (2009). Under CR 15(b), "[w]here evidence raising issues beyond the scope of the pleadings is admitted without objection, the pleadings will be deemed amended to conform to the proof." *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 766-67, 733 P.2d 530 (1987). CR 15(b) permits amendment of the pleadings at any time, including at the trial's conclusion or at entry of judgment. *Harding v. Will*, 81 Wn.2d 132, 136, 500 P.2d 91 (1972).

In determining whether the parties impliedly tried an issue, we examine the record as a whole, the evidence on the issue admitted at trial, and the legal and factual support for the trial court's conclusions regarding the issue. *Karlberg v. Otten*, 167 Wn. App. 522, 530-31, 280 P.3d 1123 (2012). "Absent a showing of surprise or prejudice, it is not error for a trial court upon perceiving both the issues and parties before it to be other than as pleaded, to realign parties and redefine issues" under CR 15(b). *Harding*, 81 Wn.2d at 137-38.

Importantly, the Olivases do not assign error to the trial court's finding of fact 35, making it a verity on appeal: "The parties have an interest in finally resolving this dispute, and the Court finds that each had notice that the error in the 2003 deed must be resolved, and impliedly consented to try the issue of reformation of the 2003 deed and were not prejudiced nor surprised." CP at 191 (FOF 35). Given this verity, the Olivases cannot now show that they were prejudiced by the reformation of the 2003 deed.

11

Moreover, substantial evidence supports the trial court's finding of fact that the Olivases were not prejudiced. Throughout the case, the Mekalsens made it clear that they intended to stand, in equity, on the description in the 2003 deed. In the Mekalsens' trial brief, they responded to the Olivases' contention that the 2003 deed contained a defect by citing case law for the premise that a person may be entitled by equity to judgment quieting or removing a cloud from his title to real property regardless of whether he held strict legal title. And at trial, the Olivases' and the Mekalsens' competing experts each testified to the issue of the third "N. ½" in the 2003 deed caption.

This case is similar to *Tenco, Inc. v. Manning*, 59 Wn.2d 479, 368 P.2d 372 (1962). There, our Supreme Court upheld the trial court's decision to reform a defective property description that resulted from a mutual mistake. *Tenco*, 59 Wn.2d at 486. The *Tenco* court upheld the trial court's decision despite reformation not being specifically pleaded in the complaint. 59 Wn.2d at 484. The *Tenco* court explained, "This relief was certainly within the pleadings, because the complaint requested not only specific performance but 'such other and further relief as to the court seems just.'" 59 Wn.2d at 484. Similarly here, the Mekalsens pleaded for "[s]uch other relief, legal and equitable, as the court may deem just and proper." CP at 111.

Because the Olivases cannot show that they were prejudiced by the trial court's amendment of the pleadings to reach the issue of reformation of the 2003 deed, we hold that the trial court did not abuse its discretion.

12

B.        *Scrivener's Error*

The Olivases also argue that the evidence presented at trial did not support a deed reformation. We disagree.

A quiet title action is a claim for equitable relief. *Kobza v. Tripp*, 105 Wn. App. 90, 95, 18 P.3d 621 (2001). Trial courts have broad discretion to fashion equitable remedies. *Sorenson v. Pyeatt*, 158 Wn.2d 523, 531, 146 P.3d 1172 (2006). We review a trial court's consideration of equitable remedies for abuse of discretion. *Sorenson*, 158 Wn.2d at 531. "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds." *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994).

Reformation is an equitable remedy to bring a writing that is materially different from the parties' agreement into conformity with that agreement. *GLEPCO, LLC v. Reinstra*, 175 Wn. App. 545, 560, 307 P.3d 744 (2013). Reformation of a deficient description in a deed is appropriate where the deficiency is due to scrivener's error. *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 843-44, 999 P.2d 54 (2000). "The party seeking reformation has to show only that the parties agreed to accomplish a certain objective and that the instrument is insufficient to execute their intention." *Wilhelm*, 100 Wn. App. at 844.

The evidence at trial supported the trial court's conclusion that the third "North ½" in the 2003 deed caption was a scrivener's error. The description of the northern boundary of the Olivases' property, dating back to its original conveyance as "Tax 38" in 1992 has consistently matched the center line of the 1984 easement survey and never included the disputed triangle. But for the extra "North ½" in the 2003 deed caption, the description of the Mekalsens' southern boundary and the Olivases' northern property would be consistent. The Mekalsen family's

history of attempting to correct the Mekalsens' deed to the property is also consistent with the notion that the Mekalsen family intended the Mekalsens to own the disputed triangle property.[6]

Accordingly, we hold that the trial court did not abuse its discretion in determining that the equities weighed in favor of the Mekalsens, reforming the 2003 deed, and entering judgment of quiet title in favor of the Mekalsens.

### IV. TRIAL ATTORNEY FEES & COSTS

The trial court awarded costs and statutory attorney fees to the Mekalsens as the prevailing party.

The Olivases argue that the trial court erred by awarding costs to the Mekalsens because the Mekalsens were not the prevailing party. We disagree.

We review a trial court's award of fees and costs for an abuse of discretion. *Bank of Am. NT & SA v. David W. Hubert, P.C.*, 153 Wn.2d 102, 123, 101 P.3d 409 (2004). RCW 4.84.030 allows statutory costs and attorney fees to a "prevailing party." See also RCW 4.84.080. We review whether a party is a "prevailing party" under an error of law standard. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 782, 275 P.3d 339 (2012). The prevailing party is the one that receives an affirmative judgment in its favor. *Wright*, 167 Wn. App. at 782-83.

The Mekalsens were the prevailing party. The Olivases filed suit against the Mekalsens arguing that they were entitled to quiet title of the disputed property. The trial court entered judgment in favor of the Mekalsens, finding that they were entitled to title of the disputed

---

[6] Additionally, we reject the Olivases' argument that the trial court should have adhered to the Wattles textbook and strictly interpreted the caption as written. The Olivases cite no law requiring that Washington courts be bound by surveying practice guidelines when fashioning equitable remedies. Such a rule would violate the courts broad equitable powers, especially when a deed caption appears to have a scrivener's error.

property. The Olivases did not prevail on any theory. Because the Mekalsens were the only party that prevailed on an issue and received an affirmative judgment, they are the prevailing party.

The Olivases contend that because the Mekalsens did not prevail on their pleaded claims of trespass, adverse possession, or a valid deed, they were not the prevailing party. Although the Mekalsens did not prevail on those claims, they ultimately prevailed on their claim of quiet title, and were the only party who received an affirmative judgment.

Accordingly, we hold that the trial court did not abuse its discretion by awarding attorney fees and costs to the Mekalsens.

ATTORNEY FEES ON APPEAL

Both parties seek attorney fees and costs on appeal. We reject the Olivases' argument for attorney fees and costs on appeal because the Olivases are not the prevailing party.

The Mekalsens seek attorney fees and costs on appeal under RAP 18.1, which allows this court to grant a party reasonable attorney fees or expenses if an applicable statute permits. However, the Mekalsens fail to cite any such applicable statute. Rather, the Mekalsens focus their argument on their contention that the Olivases' appeal is frivolous. But they fail to cite RAP 18.9, which is the rule permitting this court to award attorney fees and costs to an opposing party when a party brings a frivolous appeal.

Moreover, although we hold that the Olivases' arguments on appeal fail, we also hold that their appeal is not so devoid of merit as to be frivolous. "An appeal is frivolous if, considering the whole record, the court is convinced there are no debatable issues on which

15

No. 51877-5-II

reasonable minds may differ and it is totally devoid of merit." *In re Recall of Boldt*, 187 Wn.2d 542, 556, 386 P.3d 1104 (2017).

Accordingly, we reject both parties' requests for attorney fees and costs on appeal under RAP 18.1.[7]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, A.C.J.

Cruser, J.

---

[7] Nothing in this opinion should be construed to preclude the Mekalsens from seeking costs under RAP 14.2.

16